[No. 9180–8–I.   Division One.   June 28, 1982.]

EDWARD H. MURPHY, *Appellant,* v. THE CITY
OF SEATTLE, ET AL, *Respondents.*

*Morrow & Duncan* and *Catherine C. Morrow,* for appellant.

*Douglas N. Jewett, City Attorney, Elizabeth A. Edmonds, Assistant,* and *Timothy Bradbury,* for respondents.

DURHAM, J.—Edward Murphy appeals the superior court judgment affirming the Seattle Board of Adjustment's denial of variances and a conditional use in connection with Murphy's chiropractic clinic.

The case involves several city lots located on the southeast corner of the intersection of Broadway Avenue East and East Highland Drive in Seattle's Capitol Hill area. Prior to 1978, the land was owned by Scottish Rite Temple of Seattle, Inc., which used part of it for parking. Three buildings occupied the remaining parts: a brick building (later demolished), a duplex residence, and another duplex, the top floor of which was a residence and the ground floor of which housed a chiropractic clinic operated by appellant

Edward Murphy. The tract was divided into six lots, lots 5 and 6 being the two southernmost parcels. The clinic was originally located on lot 3, about 100 feet north of lot 5.

In the early 1970's, a controversy arose among Scottish Rite, the City of Seattle, and various neighbors/intervenors. In part, the dispute concerned parking on the above described lots. On December 21, 1973, Scottish Rite and the intervenors entered into a stipulation which settled the matter. The stipulation provided for the consolidation of Scottish Rite parking at the northern end of the block. Lots 1 through 4 would be converted to a parking lot. Lots 5 and 6 would no longer be used for parking. In fact, the plans and drawings referred to and incorporated in the stipulation required that Scottish Rite "return lots 5 and 6 to residential in accordance with the City's zoning and buildings code." Finally, the last paragraph of the stipulation provided that "[t]his agreement and the duties required of each thereunder shall be binding upon the . . . successors and assigns of the plaintiff [Scottish Rite] and of the intervenors respectively."

The lots in question are all located in an RM 800 zone, multiple residence low density. Murphy operated his clinic on lot 3 under a conditional use for approximately 12 years, as did another doctor before him for 9 or 10 years. Both rented the premises from Scottish Rite.

In 1978, Murphy purchased lots 5 and 6 and the duplex buildings from Scottish Rite. He moved the buildings to his lots, placing the clinic on lot 5. On March 8, 1979, Murphy applied for a conditional use and for turning path width and arterial variances pursuant to city ordinances then in effect.[1] Several neighbors, including the intervenors herein, objected to Murphy's use of the lot 5 duplex as a clinic. They claimed traffic and parking congestion would result, and that Murphy was legally bound by the stipulation to use lots 5 and 6 for residences only.

---

[1] Chapter 24.74 of the Seattle Municipal Code, under which the applications were made, has since been amended.

A hearing was held before a city hearing examiner on June 1, 1979. The hearing examiner denied Murphy's application. The examiner found that Scottish Rite had agreed to return lots 5 and 6 to residential use, and concluded that Murphy had purchased the lots with knowledge of that agreement and that the use of lot 5 as a clinic would be materially detrimental to the neighborhood. Murphy claimed ignorance of the terms of the stipulation prior to moving the buildings.

Murphy appealed the decision to the city Board of Adjustment. The Board heard testimony from all parties, including discussion of the Scottish Rite stipulation and its effect on Murphy's application. The Board voted to uphold the hearing examiner's decision. The King County Superior Court affirmed the Board on a writ of certiorari.

■ In reviewing an action by a board of adjustment, we determine only if the action of the board was arbitrary, capricious, or contrary to law. *Lewis v. Medina*, 87 Wn.2d 19, 548 P.2d 1093 (1976); *Ling v. Whatcom Cy. Bd. of Adj.*, 21 Wn. App. 497, 585 P.2d 815 (1978). Since the Superior Court heard this case by way of certiorari, the scope of review is further defined by RCW 7.16.120 as follows:

The questions involving the merits to be determined by the court upon the hearing are:

(1) Whether the body or officer had jurisdiction of the subject matter of the determination under review.

(2) Whether the authority, conferred upon the body or officer in relation to that subject matter, has been pursued in the mode required by law, in order to authorize it or to make the determination.

(3) Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator.

(4) Whether there was any competent proof of all the facts necessary to be proved, in order to authorize the making of the determination.

(5) If there was such proof, whether there was, upon all the evidence, such a preponderance of proof, against the existence thereof, rendered in an action in a court, triable by a jury, as would be set aside by the court, as against

the weight of evidence.

The first three subsections of this statute govern jurisdiction and the legality of the lower tribunal's decision. The last two subsections govern the court's review of factual matters and encompass, essentially, the arbitrary and capricious standard used in nonwrit cases. *Andrew v. King Cy.*, 21 Wn. App. 566, 586 P.2d 509 (1978); *Dulmage v. Seattle*, 19 Wn. App. 932, 578 P.2d 875 (1978); *State ex rel. Tidewater–Shaver Barge Lines v. Kuykendall*, 42 Wn.2d 885, 259 P.2d 838 (1953).

■ We must apply the standard of review described here directly to the record of the administrative proceeding. *Standow v. Spokane*, 88 Wn.2d 624, 564 P.2d 1145 (1977). The record of the hearing examiner's hearing is not before us. Proper judicial review is possible only where the court can consider the full and complete record of the administrative tribunal. *Barrie v. Kitsap Cy.*, 84 Wn.2d 579, 527 P.2d 1377 (1974). Therefore, we will confine our review to the record and decision which is before us, *i.e.*, that of the Seattle Board of Adjustment.

■ Murphy does not contend that the Board of Adjustment lacked jurisdiction to hear his case; clearly the Board had jurisdiction. Seattle Municipal Code 24.74.080 (1974). Murphy does assign error to the manner in which the Board conducted the hearings. He claims that he was not allowed to rebut additional adverse witnesses, that certain members of the Board not present at prior proceedings failed to listen to tapes of those proceedings, and that the proceedings lacked the appearance of fairness. We disagree. The Board is vested with discretion to hear additional evidence and did not abuse that discretion by hearing additional witnesses. Seattle Municipal Code 24.74.110 (ordinance 86300, § 28.53 (1957)). We are unaware of any rule requiring all members of an administrative panel to listen to tapes of prior hearings. Moreover, it is apparent here that all Board members did review the record before the final hearing. Nor did the Board violate the appearance

of fairness doctrine. Murphy points to a Board member's comment expressing "distaste" for Scottish Rite's actions. Yet he does not suggest, nor does the record reflect, that any member of the Board might have benefited personally, directly or indirectly, from the denial of Murphy's application. *Buell v. Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972). We conclude, after reviewing the record, that the Board did not conduct these proceedings in a manner contrary to law. RCW 7.16.120(2).

■ RCW 7.16.120(3) authorizes the court to review errors of law in the decision of the administrative tribunal. Murphy claims that two such errors inhere in the Board's denial of his application. First, he claims that because the term "arterial" is not defined in the zoning ordinance, the requirement that clinics be located on arterials is unconstitutionally vague. This argument requires no elaborate discussion. The test for vagueness is "whether the language can be understood by a person of normal understanding." *Bitts, Inc. v. Seattle*, 86 Wn.2d 395, 399, 544 P.2d 1242 (1976). Anyone with normal understanding can understand what "arterial" means as it relates to the location of clinics. We do not find the ordinance void for vagueness.

Murphy's second claimed error of law is more serious. He claims that the Board acted, as stated in his brief, "ultra vires" in assuming that the Scottish Rite stipulation bound Murphy and precluded the granting of the conditional use. Indeed, the record before us indicates that both the hearing examiner and the Board of Adjustment relied upon the stipulation in denying the application.

■ It is not necessary to define the exact nature of the stipulation as a covenant which "runs with the land" or as an "equitable servitude." *See* Washington State Bar Ass'n, *Real Property Deskbook* §§ 15.1 *et seq.* (1979). The terms of the stipulation itself make it clear that the parties thereto intended to impose a restriction on the use of land. The determinative question is if the stipulation bound Murphy to the restriction. Washington courts have stated that a purchaser without notice of restrictions on the use of

land takes free of such restrictions. *Hendricks v. Lake,* 12 Wn. App. 15, 528 P.2d 491 (1974); *Bersos v. Cape George Colony Club,* 10 Wn. App. 969, 521 P.2d 1217 (1974). Thus, the binding effect of the stipulation upon Murphy depends on what, if any, notice he had.

In *Hendricks* the court held that an unrecorded lease which contained a restrictive covenant did not bind a successor lessor who had no knowledge of the terms of the lease. The unrecorded lease could not give constructive notice. *Hendricks v. Lake, supra.* In *Bersos,* the buyer of a subdivision lot was not bound by an agreement not to subdivide his lot, made orally between his predecessor in interest and the subdivision's predecessor. Since the agreement was not recorded, Bersos had no constructive notice and took free of the restrictions. *Bersos v. Cape George Colony Club, supra. Pioneer Sand & Gravel Co. v. Seattle Constr. & Dry Dock Co.,* 102 Wash. 608, 173 P. 508 (1918) presents an illustration of the same principle. In that case, the court held that a recorded contract, entered into by owners of adjacent tracts of tideland and which contained restrictions on the use of the tideland, gave constructive notice of the restrictions to subsequent purchasers.

The common thread which runs through these cases is the principle that our recording statute, RCW 65.08.030 *et seq.,* protects parties and their successors who agree to restrict the use of land from subsequent purchasers of the land who wish to escape the burden of the restrictions. The statute imparts constructive notice to such purchasers. It is also clear that in order to enjoy this protection, the original covenantors must record the agreement according to statute. *Pioneer Sand & Gravel Co. v. Seattle Constr. & Dry Dock Co., supra.*

The stipulation between Scottish Rite and the intervenors in the original lawsuit was never recorded in the office of the King County Auditor, as required by the recording statute. RCW 65.04.020 *et seq.;* RCW 65.08.030 *et seq.* Although the stipulation was of "public record" insofar as it was filed with the clerk of the court as part of a lawsuit,

such a filing cannot trigger the protection of the recording statute. Accordingly, Murphy did not have constructive notice of the restriction, and the Board could not have based the denial of Murphy's application on a finding to that effect.

Murphy also could have had actual notice of the stipulation, and if he did, he would be bound by the restriction. The question of actual notice is factual and reviewable under RCW 7.16.120(4) and (5). The record, however, reveals very little evidence as to actual knowledge. Murphy disclaimed any knowledge of the nature of the Scottish Rite lawsuit, the stipulation, or the parties involved. When asked by a Board member if the restriction would have been discovered in a title search, counsel for the intervenors stated that he did not know. Counsel said that the stipulation was "very much a matter of public record" because public notices were posted regarding the original Scottish Rite dispute, it was a matter of record in the zoning department, and the controversy appeared on the front page of the community newspaper. Even if counsel's representations were to be considered as evidence, they do not provide a sufficient basis to support a finding of actual notice. Similarly, the record fails to reveal knowledge by Murphy of any facts sufficient to prompt an inquiry which would have disclosed the restriction. See *Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 457 P.2d 600 (1969).

A finding not supported by evidence of record, and an order based thereon, is arbitrary. *State ex rel. Tidewater–Shaver Barge Lines v. Kuykendall, supra.* Because Murphy did not have constructive notice as a matter of law, and because virtually no evidence was presented to the Board to support a finding that he had actual notice, we reverse the judgment of the Superior Court which affirmed the Board's decision. We express no opinion as to the merits of Murphy's application for variances and a conditional use, those being matters for administrative determination according to zoning guidelines and upon consideration of

394

the proper facts. The case is remanded to the Seattle Director of Construction and Land Use for consideration of Murphy's application in a manner consistent with this opinion.

ANDERSEN, C.J., and JAMES, J., concur.