[No. 8160–5–III.   Division Three.   May 10, 1988.]

C.R. VALENTINE, ET AL, *Appellants,* v. THE BOARD OF ADJUSTMENT FOR KITTITAS COUNTY, ET AL, *Respondents.*

*Kenneth Beckley* and *Frederick, Beckley & Cooper,* for appellants.

*David A. Pitts, Prosecuting Attorney,* for respondents.

McINTURFF, C.J.—C.R. Valentine and William T. Dikeman (collectively referred to as Dikeman) appeal a judgment affirming a decision by the Kittitas County Board of Adjustment (Board) prohibiting rock crushing on Dikeman's property. We affirm. The fact that the State Department of Natural Resources (DNR) had issued Dikeman's predecessor a surface mining permit did not operate to deprive the Board of jurisdiction to regulate rock crushing. Such activity does not constitute surface mining and, thus, is not subject to DNR jurisdiction.

Dikeman holds the mining rights on certain property located west of Ellensburg, Washington. The prior owners secured a conditional use permit in late 1978 from the Board allowing the excavation of gravel. In 1980, DNR issued them a surface mining permit which was transferred to Dikeman in 1982.

In 1985, Dikeman installed and began operating a rock crusher at the site. The Kittitas County planning director informed Dikeman by letter that the conditional use permit did not authorize this activity and it must stop immediately. Dikeman appealed this decision to the Board. A hearing was held in July 1985. At that hearing, Dikeman argued that under RCW 78.44, the surface mining act, DNR has exclusive jurisdiction to regulate surface mining activities.

The 1980 application to DNR for the surface mining permit is part of this record. It contains a section titled "County or Municipality Recommendations" signed by the planning director.[1] He answered "yes" to the following questions:

1. Is the proposed subsequent use [fish and wildlife pond] legal under current local zoning regulations?

2. Does local regulation permit surface mining at the designated site?

3. Has the applicant obtained appropriate permits as may be required by local regulation?

The form included a space for recommendations, which he left blank. It also contained a section titled "Environmental Checklist" in which the previous owners had described the nature of their proposal as "to surface mine gravels to be used in screening, washing, and possibly crushing operations", and had specifically identified crushing as a plan for "future additions, expansion, or further activity related to or connected with this proposal". In

---

[1]County input was solicited pursuant to WAC 332–18–015, which states:

"A surface mining permit . . . will not be issued until satisfactory evidence has been submitted that the proposed surface mining will not be contrary to local land use ordinances and regulations."

response to a question on the checklist asking whether the proposal would result in air emissions, the owners answered: "Yes—If crushing operation is done emissions will take place."

Counsel for the planning department argued that the surface mining act covers only mining and reclamation of the land and does not regulate processing, such as rock crushing. Instead, he asserted county ordinances regulate processing. Here, an ordinance prohibits rock crushing in the suburban zoned area in which this property is located. The minutes of the 1978 meeting of the Board which addressed the prior owners' application for a conditional use permit reflect the owners were asked at that time if a rock crusher would be used; they said no.

The Board voted to uphold the planning director's ruling that rock crushing was not permitted. Dikeman then appealed to the superior court for an order requiring the Board to certify the record for review and for a writ of prohibition to bar enforcement of the Board's decision. The superior court affirmed the Board's decision, concluding that '[t]he State has the exclusive right to regulate mining under the Surface Mining Act but the act does not regulate processing on site", that the "Act does not preempt County regulations of rock crushing activities", and that the County "is not estopped to deny that [Dikeman has] permission to operate a rock crusher". On appeal, we review the Board's decision to determine whether it was arbitrary, capricious or contrary to law. *Murphy v. Seattle,* 32 Wn. App. 386, 389, 647 P.2d 540 (1982).

The purpose of the surface mining act is "to provide that the usefulness, productivity, and scenic values of all lands and waters involved in surface mining . . . will receive the greatest practical degree of protection and restoration." RCW 78.44.020. No one may engage in surface mining without first obtaining an operating permit from DNR. RCW 78.44.080. The application for the permit must include an acceptable reclamation plan. RCW 78.44-.080(10). Administration of the chapter is fixed in DNR.

RCW 78.44.040. When DNR finds a person conducting surface mining without a valid permit or in a manner not authorized by his permit, it may order that person to suspend operations, and fine him if he does not obey. RCW 78.44.160.

On October 27, 1970, the Attorney General issued an opinion in response to the following question posed by State Senator William Gissberg:

> In the case of an operator to whom a permit to engage in surface mining is issued by the state board of natural resources on or after the effective date of chapter 64, Laws of 1970, may a county, city or town prohibit the holder of this state permit from engaging in surface mining within its jurisdiction in accordance with this permit?

AGO 23 (1970), at 1. The opinion, at page 3, cites *Lenci v. Seattle*, 63 Wn.2d 664, 669–70, 388 P.2d 926 (1964), for the proposition that "[w]hether there be room for the exercise of concurrent jurisdiction . . . necessarily depends upon the legislative intent to be derived from an analysis of the statute involved." Here, the Legislature had deleted two passages, one from the House version of the bill and one from the Senate version, which allowed continuing county or city regulation of surface mining. Therefore, the opinion concluded the above question must be answered in the negative.

We are persuaded by the analysis in the Attorney General's opinion that DNR has exclusive jurisdiction to issue surface mining permits and regulate surface mining in accordance with the permit.[2] The question here is whether surface mining includes rock crushing.

---

[2] In oral argument, counsel for Dikeman also contended that not only does DNR have exclusive jurisdiction to regulate surface mining, it also has exclusive jurisdiction to determine what constitutes surface mining. We disagree. While counsel cites to statutes authorizing DNR to administer the chapter and to regulate surface mining, RCW 78.44.040 and .160, those statutes do not confer authority on DNR to define the term "surface mining". That term is defined in the act itself. RCW 78.44.030(1). Here, the task of the court is to apply that definition to the facts presented. Activities covered by the definition must be referred to DNR; activities which are not covered are regulated properly by other agencies.

As defined in RCW 78.44.030(1), "'[s]urface mining' shall mean all or any part of the process involved in mining of minerals by removing the overburden and mining directly from the mineral deposits thereby exposed . . ." Minerals include stone and gravel. RCW 78.44.030(4).[3] Dikeman relies on *Reid v. King Cy.*, 35 Wn. App. 720, 669 P.2d 502 (1983). That court addressed whether the surface mining act permits the State to regulate the operational phases of surface mining or whether the State is limited to fixing the final reclaimed contours of the land mined. Mining operations there had violated the owner's permit which specified that the total area to be disturbed was to be in accordance with the reclamation plan approved by DNR. The court held that the act's purposes to protect public health, safety, environmental quality, scenic value and future productive use of the land, RCW 78.44.010 and .020, were effectuated only by interpreting it to control both active operations as well as reclamation. *Reid,* at 723. Otherwise, it would permit limitless excavation regardless of the consequences so long as the owners had an approved plan on file.

*Reid* is helpful only if rock crushing is part of the operational phase of mining gravel. The County argues that rock crushing in not included in the plain and ordinary meaning of "mining." It cites *Columbia Inv. Co. v. M.M. Sundt Constr. Co.,* 1 Ariz. App. 124, 400 P.2d 132 (1965), in which the court held that a mineral lease issued by the state land department for the mining of sand and gravel did *not* include the right to construct machinery on the leased premises for washing, screening, crushing and sorting. *Sundt,* 400 P.2d at 137. The court rejected the analogy to placer mining proposed by the lessee:

---

[3]Dikeman places much emphasis on the fact that the statutory definition of "mineral" includes "gravel". Here, rock crushing apparently was necessary to turn the stone mined at the site into gravel. However, the determinative issue here is not whether gravel is a mineral. Rather, the question is whether the operation of a rock crushing machine is "part of the process involved in mining of minerals by removing the overburden and mining directly from the mineral deposits thereby exposed". RCW 78.44.030(1).

In placer mining, the material being removed from the earth is not in essence the mineral that is being sought. What is removed from the ground and placed in the placer mining machinery is composed only in a very small proportion of the mineral that is being mined. The placer operation itself is the process of *extraction* of mineral from the earth and thus of the essence of mining.

In sand and gravel mining, the material that is removed from the ground is basically all sand and gravel. The machinery being used is in only a very minor sense used to seek out and extract from the soil that which is being mined. In a greater sense, the machinery is used to reshape and classify the material, so as to give it commercial value.

*Sundt,* at 127–28. *See also Commonwealth ex rel. Rock Castle Cy. v. W.J. Sparks Co.,* 222 Ky. 606, 1 S.W.2d 1050 (1928) and *Tulsa Mach. Co. v. State Tax Comm'n,* 208 Okla. 138, 253 P.2d 1067 (1953), which held that rock crushing amounted to manufacturing, not mining; and Black's Law Dictionary 898 (5th ed. 1979) which defines mining as "[t]he process or business of extracting *from the earth* the precious or valuable metals, either in their native state or in their ores." (Italics ours.)

In *Reid,* the "operational phase" which the court held was the proper subject of regulation under RCW 78.44 involved the process of *extracting* the mineral from the ground. Here, rock crushing is a process that takes place after the mineral is extracted. It is part of the manufacturing process rather than the mining process. Hence, RCW 78.44, which relates to surface *mining,* does not regulate rock crushing.

■ In the 1987 regular session, the Legislature added the following language to the statutory definition of "surface mining": "Surface mining shall not include on–site processing of minerals such as concrete batching or rock crushing operations." Laws of 1987, ch. 258, § 1, p. 946, codified as RCW 78.44.030(1). 1A N. Singer, *Statutory Construction* § 22.30, at 266 (4th ed. 1985) states:

Although a presumption of change in legal rights is probably reasonable in that an amendment is more frequently used to add or take a provision from a law than to interpret it, the fact of amendment by itself does not indicate whether the change is of substance or form—whether a right is added to or taken from the original act, or whether a provision in the original act is merely being interpreted, that is, made more detailed and specific. To determine this the circumstances surrounding the enactment must be looked to.

Since the Legislature did not change the sentence generally defining "surface mining", we do not construe the language added by the Legislature as a change in the law. Rather, it clarifies the Legislature's intent that the definition of surface mining does not include on–site processing such as rock crushing operations. Our interpretation is supported by the fact that the act's purpose, *i.e.*, to protect "the usefulness, productivity, and scenic values" of land involved in surface mining, RCW 78.44.020, is not furthered by regulation of on–site processing. Such processing has no effect on the land itself.

The superior court properly concluded the Board had jurisdiction to regulate this use of the land.

Dikeman next contends the Board's findings that rock crushing was not authorized by the conditional use permit and was in violation of the Kittitas County zoning code are arbitrary and capricious. He argues (1) the permit allowed unlimited excavation of gravel, (2) evidence of the discussion concerning rock crushing at the meeting in 1978 in which the Board approved the prior owners' application for a conditional use permit cannot be used to impose a binding condition on Dikeman, who was not present at the meeting, and (3) there is no evidence that rock crushing on the site is otherwise a code violation.

Both the minutes of the December 21, 1978, meeting of the Board and the follow–up letter to the prior owners dated January 19, 1979, refer to the Board's action as being that of approving the application for the *excavation* of gravel. Under the authorities cited above, the plain and

ordinary meaning of excavation does not include crushing. This analysis makes it unnecessary for us to decide whether Dikeman is bound by the on–the–record discussion in which the prior owners represented to the Board that rock crushing would not be conducted on the premises.

However, the referenced discussion, which is part of the minutes of the meeting in which the Board approved the excavation of gravel, is materially different from the unrecorded stipulation between private parties at issue in *Murphy v. Seattle,* 32 Wn. App. 386, 647 P.2d 540 (1982). There, the court held, at pages 392–93, that the stipulation regarding land use entered into by the appellant's predecessor in interest and his neighbors could not bind the appellant because it was never recorded in the office of the county auditor as required by the recording statute. RCW 65.04; RCW 65.08. Here, the discussion was part of the record of the Board's action on the application for the permit.

Dikeman's challenge to the finding that rock crushing was in violation of the zoning code is not well taken. The finding is supported by the on–the–record statement by counsel for the planning department that the county ordinance does not allow this activity on property, like Dikeman's, which is zoned suburban. Moreover, Dikeman does not assign error to the Board's first finding of fact which states that rock crushing is a conditional use in the Kittitas County zoning code.

We conclude the findings are supported by the record and are not arbitrary and capricious. *Murphy,* at 389.

Finally, Dikeman asserts the County is equitably estopped from prohibiting rock crushing. He analogizes to the vested rights doctrine, which fixes a developer's rights as of the date his application is made, and argues that the action by the Board in 1985 prohibiting rock crushing amounted to a withdrawing of the 1978 conditional use permit. In addition, Dikeman points out the 1980 application to DNR for a surface mining permit referred to possible crushing operations and received the county planning

director's approval. Dikeman claims he relied on these unconditional permits to his detriment.

As noted above, the conditional use permit was for the excavation of gravel. The permit issued by DNR was for surface mining. We have held the plain and ordinary meanings of these terms do not include rock crushing. The fact that the owners mentioned the possibility of rock crushing on site in response to questions posed by the State regarding the nature of their proposal does not mean the State approved rock crushing when it approved their application for a surface mining permit. Nor did the county planning director's signature on the application amount to approval of rock crushing operations. The owners' references to such operations were phrased in terms of a future possibility. The planning director properly could assume that the owners would apply for a permit before starting crushing operations. These facts do not support a finding of estoppel.

The judgment of the Superior Court is affirmed.

GREEN and THOMPSON, JJ., concur.

Review denied by Supreme Court September 1, 1988.