[No. 28573-4-I.   Division One.   December 28, 1992.]

RONALD BAKER, ET AL, *Respondents*, v. SNOHOMISH COUNTY DEPARTMENT OF PLANNING AND COMMUNITY DEVELOPMENT, *Appellant*.

582

*Seth R. Dawson, Prosecuting Attorney,* and *Linda Scoccia, Deputy,* for appellant.

*David E. Duskin* and *Bailey, Duskin & Peiffle,* for respondents.

FORREST, J. — The Snohomish County Department of Planning and Community Development, Community Development Division (DPCD) appeals the Superior Court's order reversing a decision by John E. Galt,[1] a Snohomish County hearing examiner, that sustained the notice and order issued by DPCD to Ronald and Joyce Baker notifying them of their violation of a local ordinance regulating surface mining. DPCD claims that the Superior Court erred in concluding that Washington's surface mining act (SMA)[2] preempts local regulation of surface mining. We reverse.

Baker owns a 21-acre parcel of property in Snohomish County that, at all times relevant to this appeal, was zoned for rural use.

Pursuant to Snohomish County Code (SCC) 18.32.040, the excavation of minerals or other natural deposits in rural zones

---

[1] John E. Galt, a Snohomish County hearing examiner, was originally named as the appellant in the caption. The real dispute, however, is between Ronald and Joyce Baker, the landowners, and DPCD. Both parties have so argued the appeal. Accordingly, we treat DPCD as the appellant herein.

[2] RCW 78.44.

requires the issuance of a conditional use permit. In December 1977, the Snohomish County zoning adjuster granted Baker a conditional use permit authorizing the removal of approximately 21,000 cubic yards of topsoil. The permit was granted for a period of 5 years, with a possible extension of up to 1 year. The permit was not renewed upon its expiration.

In July 1978, Baker applied for and received a permit from the Department of Natural Resources (DNR) pursuant to the SMA. The permit authorized Baker to conduct surface mining on the property. DNR continued to renew this permit and, at all times relevant hereto, Baker was conducting surface mining pursuant to a valid permit from DNR.

On January 9, 1990, DPCD issued a notice and order to Baker charging him with allowing the excavation and processing of minerals without a permit in violation of SCC 18.32.040. On January 18, 1990, Baker appealed the notice and order on two grounds: (1) the use was a preexisting, nonconforming use of the property, and (2) if not, Baker was not required to obtain a conditional use permit from the county because he was operating pursuant to a valid DNR permit.

A public hearing on Baker's appeal was held on March 1, 1990, before the hearing examiner. By written decision dated March 14, 1990, the hearing examiner sustained the notice and order on the ground that RCW 78.44 does not preempt the county's right to regulate the use of land for excavations.

Baker appealed this decision to the Superior Court on a writ of review. The court entered findings of fact and conclusions of law in which it concluded that the SMA preempts local regulation of surface mining. The court set aside the hearing examiner's decision and concluded that Baker was not required to obtain a conditional use permit from DPCD.

Did the trial court err in concluding that Washington's SMA preempts local regulation of surface mining and that the county cannot require Baker, who has obtained valid permits under the SMA, to obtain conditional use permits from the county?

## General Considerations

■ When superior court review is by writ of review, as here, the appellate court conducts the same review on appeal as the superior court, but de novo.[3] That is, the court's review is limited to a review of the record before the local governmental entity and to a determination of whether that entity's action was arbitrary and capricious or contrary to law.[4]

■ Municipalities are constitutionally vested with the authority to enact ordinances in furtherance of the public health, safety, morals, and welfare.[5] However, "the plenary police power in regulatory matters accorded municipalities by Const. Art. 11, § 11, ceases when the state enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction." *Lenci v. Seattle*, 63 Wn.2d 664, 669, 388 P.2d 926 (1964). Whether there is room for concurrent jurisdiction depends upon the legislative intent to be ascertained from an examination of the statute involved and the interaction between the state and local provisions.[6] Where the Legislature does not specifically state its intent to occupy a given field, such intent can be inferred from "the purposes of the legislative enactment and . . . the facts and circumstances upon which the enactment was intended to operate." *Lenci*, at 670.

## State Preemption

Baker asserts that the SMA has preempted the field of the regulation of surface mining and that, accordingly, Snohomish County may not enforce any of its local land use

---

[3]*Bay Indus., Inc. v. Jefferson Cy.*, 33 Wn. App. 239, 240-41, 653 P.2d 1355 (1982).

[4]*Bay Indus.*, at 241.

[5]Const. art. 11, § 11 provides:
"Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

[6]*Lenci v. Seattle*, 63 Wn.2d 664, 669, 388 P.2d 926 (1964).

regulations as to surface mining operations. Baker does not assert or rely on any actual conflict between the terms and the conditions of his DNR permit and the terms and conditions imposed by his previous Snohomish County conditional use permit.[7] Since he has refused to apply for a renewal or extension of his conditional use permit, he cannot claim that the county would require anything in conflict with his DNR permit. In short, he argues that the SMA has preempted the field as a matter of legislative policy just exactly as if it had expressly so stated and not because such preemption is in fact necessary to effectuate the purposes of the act or to avoid direct conflict between state law and the local ordinance.

In support of his position, Baker relies on an attorney general's opinion, AGO 23 (1970),[8] and its subsequent approval in *Valentine v. Board of Adj.*[9] As a preliminary matter we note that the AGO went considerably beyond the question asked, which was:

> In the case of an operator to whom a permit to engage in surface mining is issued by the state board of natural resources on or after the effective date of [the surface mining act], may a county, city or town *prohibit* the holder of this state permit from engaging in surface mining within its jurisdiction in accordance with this permit?

(Italics ours.) AGO 23, at 1. The Attorney General found, based on the legislative history of the SMA, that not only may the county not "prohibit" as asked in the question but also that the State has preempted the field and the county may not regulate surface mining at all.

Although beyond the scope of the question asked, the validity of the broader conclusion of the opinion interpreting

---

[7] Indeed, it appears he operated successfully under his conditional use permit and his DNR permit.

[8] Hereinafter, this opinion will be referred to as the AGO.

[9] 51 Wn. App. 366, 753 P.2d 988, *review denied*, 111 Wn.2d 1010 (1988).

the legislative history must be addressed because that conclusion was accepted by the *Valentine* court.[10]

Specifically, the AGO notes that two separate bills were introduced during the 1970 legislative session to provide for state regulation of surface mining. As originally introduced, the senate bill contained a provision that expressly reserved the right of cities and counties to adopt regulations regarding surface mining and reclamation within their jurisdictions that would be more stringent than the SMA's requirements. The house bill as amended provided that nothing in the SMA was to authorize surface mining in violation of any local ordinance or regulation. The house bill eventually died and the house amended the senate bill by deleting substantially all of its provisions and substituting the text of the amended house bill. The senate rejected the house amendment and the bill was ultimately referred to a free conference committee. The bill as reported out of the free conference committee contained no explicit provision allowing local regulation of surface mining operations. Both houses accepted the committee's version of the bill and enacted the bill as it was reported out of the committee.

In light of this legislative history, the attorney general concluded that the Legislature preempted the field of surface mining regulation and stated:

> [W]e believe that any attempt to argue to the courts a legislative intent to allow concurrent jurisdiction, rather than to occupy the field, would most probably be doomed to failure.

> Had the legislature intended to allow continuing county or city regulation of surface mining, it could easily have manifested this intent by retaining either of the two sections . . . which were obviously drafted and designed to do just that; however, it did not do so.

AGO 23 (1970), at 6. Closely analyzed, the AGO's reasoning is unpersuasive. The AGO concluded from the legislative history that the statute must be interpreted just exactly as if

---

[10]*Valentine*, at 370.

the Legislature had explicitly provided for preemption, even though the statute is completely silent on the issue. Neither the attorney general nor Baker cites any case in which a court found implied preemption based on an examination of legislative history alone where no practical conflicts are demonstrated. Indeed, the normal rule is to presume concurrence until conflict is demonstrated.[11] Legislative history is certainly an appropriate guide to legislative interpretation,[12] but it must be used with discretion.[13] The legislative history, at most, establishes that at one time each house of the Legislature intended to explicitly recognize concurrent local control but that such provision was omitted from the statute. An intentional decision to forbid any local control does not follow as a matter of legal logic from a decision not to explicitly provide for local control.

Both houses had clearly expressed the policy of preserving local land use control. No reason is suggested for the 180-degree reversal by the free conference committee whose job is normally to reconcile versions, not to totally reverse both versions. If, indeed, the committee intended to reverse, it is surprising, in view of the significance of the issue, that the committee did not assert an express declaration of state preemption. As the County suggests, it may well have been that the committee did not consider the issue sufficiently

---

[11]*See, e.g., Brown v. Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991) (an ordinance is presumed constitutional and the burden of showing otherwise rests heavily on the party challenging its constitutionality); *State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979) ("A statute will not be construed as taking away the power of a municipality to legislate unless this intent is clearly and expressly stated."); *Nelson v. Seattle*, 64 Wn.2d 862, 867, 395 P.2d 82 (1964) (a presumption against preemption applies in the absence of a clear legislative intent to preempt).

[12]*See, e.g., Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991) (if the intent of a statute is not clear, the court may resort to statutory construction, including a consideration of legislative history).

[13]In a concurring opinion, Justice Scalia referred to legislative history as "that last hope of lost interpretive causes, that St. Jude of the hagiology of statutory construction[.]" *United States v. Thompson/Center Arms Co.*, ___ U.S. ___, 119 L. Ed. 2d 308, 112 S. Ct. 2102, 2111 (1992) (Scalia, J., concurring).

important to waste effort reconciling the two provisions, believing that no real issue as to preemption existed and that the explicit recognition of local control was unnecessary.

Clearly, DNR, the agency charged with the enforcement of the SMA, did not consider that the State had preempted the field when it proceeded to adopt WAC 332-18-015. That regulation provides: "A surface mining permit for an operation commencing after the effective date of the act will not be issued until satisfactory evidence has been submitted that the proposed surface mining will not be contrary to local land use ordinances and regulations." Administrative regulations promulgated by the agency charged with administering the act are presumed valid and entitled to great weight.[14] Indeed, far from adopting the AGO's preemption conclusion, the WAC displays great deference to local control. If Baker is correct, DNR has completely flouted the legislative intent. If so, it is surprising the Legislature has not corrected the error. The failure of the Legislature to act is taken as legislative acquiescence in, if not approval of, the interpretation given the statute by officials charged with its administration.[15] DNR's action is consistent with the long tradition of local regulation of land use in the state of Washington. For the Legislature to single out one narrow economic activity and totally remove it from traditional local land use control would be surprising, if done explicitly. We decline to hold it did so by implication on the basis of an inference from an ambiguous legislative history, particularly in the face of DNR's explicit recognition of local authority to regulate land use.

We are supported in this view by practical considerations. If local land use regulation does not apply to surface mining applications, then DNR must, each time it receives an application for a surface mining permit, in effect reevaluate the

[14]*See, e.g., Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 317, 545 P.2d 5 (1976); *Converse v. Lottery Comm'n,* 56 Wn. App. 431, 435, 783 P.2d 1116 (1989).

[15]*In re J.D.,* 112 Wn.2d 164, 169, 769 P.2d 291 (1989).

local land use planning which led to the zoning in place at the time the application is received. This would require a substantial staff and detailed local information as to areas involved. We do not believe that the Legislature, merely by not adopting explicit recognition of local authority, intended to vest unelected civil servants in Olympia with the power to override local legislative determinations as to land use throughout the state.

In general, even when they address the same field of activity, the presumption is that state legislation and local legislation are concurrent in the absence of a direct conflict.[16] Thus, although a subordinate legislative body may not prohibit something permitted by the superior legislative body, it may have the power to pass additional regulations which are not in direct conflict.[17] In determining whether an ordinance is in conflict with general laws, the test is " 'whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa[.]" *Employco Personnel Servs., Inc. v. Seattle*, 117 Wn.2d 606, 618, 817 P.2d 1373 (1991) (quoting *Bellingham v. Schampera*, 57 Wn.2d 106, 111, 356 P.2d 292, 92 A.L.R.2d 192 (1960). Judged by such a test, an "ordinance is in conflict if it forbids that which the statute permits'." (Footnote omitted.) *Employco*, at 618 (quoting *Schampera*, at 111). Snohomish County land use ordinances

---

[16]See footnote 11.

[17]*See, e.g., Inlandboatmen's Union of Pacific v. Department of Transp.*, 119 Wn.2d 697, 836 P.2d 823 (1992) (Department of Licensing's authority to regulate workplace safety aboard Washington State ferries under the Washington Industrial Safety and Health Act of 1973 held not preempted by the United States Coast Guard's regulation of the ferries under federal law); *Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank*, 98 Wn.2d 853, 659 P.2d 481 (1983) (state court's authority to hear a trademark infringement claim relating to the use of a bank's name in a confusing or misleading logo or advertisement held not preempted by the federal national banking act); *see also Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 839 P.2d 314 (1992) (state claims for defamation, outrage, racial discrimination, and tortious interference with a business relationship or expectancy brought by union member against employer held not preempted by § 301 of the Labor-Management Relations Act of 1947 because the claims are independent of the collective bargaining agreement and could be asserted without reliance on an employment contract).

do not purport to forbid anything authorized by SMA, but at most to regulate the activity. Nor do they purport to authorize surface mining without a DNR permit. Nothing in the provisions of the SMA suggests any inherent or necessary conflict with local land use regulations. On the contrary, the act is almost totally directed to concerns of reclamation and gives no direction to DNR as to land use considerations. If one were to speculate on legislative purpose, it would appear more likely that the Legislature felt local land use regulation did not sufficiently address reclamation rather than that the Legislature wanted DNR to determine where surface mining could take place irrespective of local zoning regulations.

Another factor against preemption is that it is impossible to demonstrate in the abstract that the provisions of a DNR permit and the provisions of the Snohomish County land-use ordinance are in conflict. The DNR has great flexibility in fixing the terms of its permit and the local agency likewise has a large measure of discretion in the terms to be required in a conditional use permit. Where any conflict is hypothetical and dependent upon the precise manner in which two discretionary permits were crafted, it is inappropriate to find preemption by implication. It is soon enough to find preemption when a conflict arises. There is no showing, nor even any attempt to show, that concurrent authority is not possible and, indeed, practical and feasible. It certainly was practical and feasible with respect to Baker's operation because he operated successfully under concurrent state and local regulation.

Having found the AGO unpersuasive, we need spend little time addressing *Valentine*. The appellants in *Valentine* obtained a permit from DNR authorizing them to conduct surface mining on their property and a conditional use permit from the County authorizing the excavation of gravel, thus demonstrating the feasibility of concurrent state and local regulation. The County sought to prevent the appellants from conducting rock crushing on the ground that this activity was not encompassed within the conditional use permit. The appellants contended that the County was precluded from

prohibiting rock crushing because the appellants possessed a valid DNR permit for surface mining. The court ultimately held that because surface mining did not include rock crushing, the County could enforce its ordinance. It was therefore not necessary for the court to rule on the preemption issue. Accordingly, that part of the opinion adopting the AGO preemption ruling is technically dicta. More importantly, the court did not engage in an independent analysis of the appropriate relationship between the SMA and local land use regulations, but merely accepted the reasoning of the AGO's interpretation of the legislative history. Having found that unpersuasive, we likewise, with all due respect, find the *Valentine* decision does not control the issue before us.

Since Baker refused to apply for a renewal of his permit, we find it unnecessary to address any conflict between his right to a nonconforming use and the County's requirements for renewal. The Superior Court erred in reversing the hearing examiner's determination.

Reversed.

COLEMAN and BAKER, JJ., concur.

Reconsideration denied February 2, 1993.

Review denied at 121 Wn.2d 1027 (1993).