119 P.3d 914 (2005)
James T. NAGLE, a single person, Respondent,
v.
SNOHOMISH COUNTY, Appellant.
No. 54322-9-I.
Court of Appeals of Washington, Division 1.
September 19, 2005.
*915 Jodi Harrison, Civil Div. Snohomish Co. Pros., Everett, WA., for Appellant.
J. Robert Leach, Attorney at Law, Everett, WA, for Respondent.
*916 COX, C.J.
¶ 1 An "innocent purchaser for value without actual notice" of an illegal subdivision of property is one who has given valuable consideration without express knowledge of the subdivision of the property.[1] In this Land Use Petition Act (LUPA) proceeding, James Nagle fails in his burden to show that he is entitled to relief under the Act. Specifically, the land use decision of Snohomish County that Nagle is not entitled to innocent purchaser status for property he purchased in January 1982 because he had "actual notice" that the property was illegally subdivided is supported by the record and controlling law. Accordingly, we reverse the superior court decision granting Nagle relief.
¶ 2 The relevant facts are not substantially in dispute. Nagle purchased the subject property, a 2.64 acre parcel of land in Snohomish County, from his parents in January 1982. He had earlier purchased from them a larger, contiguous parcel to the north of the subject property. At the times of the respective purchases, neither parcel of property was legally subdivided.
¶ 3 Both state statutes and the Snohomish County Code prohibit issuance of a building permit for an illegally subdivided lot, except to "an innocent purchaser for value without actual notice."[2] In 1999, Nagle submitted a request to Snohomish County seeking an exemption as an "innocent purchaser" for the property he purchased from his parents in 1982. His request included a sworn statement that he did not know of the illegal subdivision at the time he purchased the property. He admits that the property was illegally subdivided by virtue of the sale, but claims he only discovered the illegality after the sale. Nevertheless, he contends that he is entitled to an exemption because he was an "innocent purchaser" for value without "actual notice" of the illegal subdivision at the time of the sale.
¶ 4 Snohomish County denied his request on the basis that Nagle was not an innocent purchaser under the statutes because he had actual notice of the illegal subdivision at the time of the purchase. Nagle petitioned the Snohomish County Superior Court for relief under LUPA. Following rulings by that court that are not relevant to our decision on appeal, the court ultimately granted Nagle relief, remanding the matter to the County with the directive that it grant lot status for the subject parcel.
¶ 5 The County appeals.[3]

BURDEN OF PROOF
¶ 6 The County argues that Nagle has the burden of proof under LUPA to show that he is entitled to relief from the courts. We agree.
¶ 7 The plain words of the statute make clear that it is Nagle's burden to establish that he is entitled to relief under one or more of the specified subsections of the LUPA statute.[4] Thus, the superior court's analysis *917 that "under any analysis of the relative burdens of the parties, the County has failed to establish the basis for an objective denial of lot status" is incorrect. It is Nagle's burden, not the County's, to establish the right to relief under the subsections of LUPA that are at issue in this case. Thus, for purposes of this appeal, he must show that the County's land use decision is an erroneous interpretation of the law, is not supported by substantial evidence, and/or is a clearly erroneous application of the law to the facts.
¶ 8 Here, the question is whether he met that burden under any of the three criteria that he argues on appeal. We now consider each of those subdivisions of LUPA.

SUBSTANTIAL EVIDENCE
¶ 9 The County argues that its land use decision is supported by substantial evidence. With one exception, we agree.
¶ 10 When reviewing an administrative decision, we stand "in the same position as the superior court"[5] and apply "the appropriate standard of review directly to the administrative record."[6] We review factual findings under the substantial evidence standard and conclusions of law de novo.[7] Under the substantial evidence standard, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true.[8] We review the evidence and any reasonable inferences in the light most favorable to the party that prevailed in the highest forum exercising fact finding authority.[9]
¶ 11 In its November 5, 2003 written decision denying innocent purchaser status to Nagle, the County stated seven numbered factual determinations on which it primarily relied to decide that he had actual notice of the illegal subdivision of the property at issue in this case. The property is described in the record as "parcel B."[10]
¶ 12 The factual determinations are stated in relevant part as follows:
1. Mr. Nagle bought the property [parcel B] from his own parents, not from an unknown seller in an arm's length transaction.
2. Mr. Nagle was aware that [parcel B together with contiguous property] had originally been one large parcel, because he bought the north half of it from his parents in 1974 (current tax parcel 4-017), leaving them with the south half of [parcel B together with contiguous property] ...
3. Mr. Nagle's purchase of parcel B was the very transaction causing the illegal subdivision. Mr. Nagle was therefore not relying on any existing deed, record, or survey purporting to show parcel B as a separate lot.
4. No document in Mr. Nagle's chain of title indicated [parcel B together with contiguous property] had ever been legally subdivided. No plat exists for the property in question.
5. The legal description of parcel B (current tax parcel 4-029) was and is set forth in metes and bounds, and not by reference to a subdivision plat.
6. Parcel B did not have a separate tax identification parcel number prior to the purchase of the property by Mr. Nagle from his parents....

*918 7. Parcel B did not appear as a separate parcel on the zoning maps of Snohomish County at the time of the sale. The only parcel appearing on the zoning maps at that time was [parcel B together with contiguous property]....[11]
¶ 13 Substantial evidence supports the substance of most of the County's factual determinations, which we consider in light of the evidence and any reasonable inferences in the light most favorable to the County.[12] There is no dispute that Nagle purchased parcel B, the subject of the innocent purchaser request, from his parents in January 1982. Likewise, there is no dispute that in July 1974 he purchased from them a larger, contiguous property directly to the north of parcel B. Parcel B was part of the larger property to the north until the subdivision of the two properties that was created by the 1974 conveyance to Nagle by his parents. Likewise, parcel B as well as the contiguous property to the north, had all been one property at the time Nagle's parents purchased the property from their predecessors in interest in January 1961.
¶ 14 It is also undisputed that parcel B did not have a separate tax parcel number at the time of Nagle's 1982 purchase from his parents. Moreover, parcel B did not appear as a separate parcel on the zoning maps of the County at the time of the purchase.
¶ 15 We disagree with the County's characterization of the legal description of parcel B as a "metes and bounds" description. That characterization is incorrect, as a leading authority on real estate explains.[13] Rather, the legal description of parcel B is stated in fractional parts of a unit on the government survey:

The West 150 feet of the South ½ of the West ½ of the East ½ of the Southwest ¼ of the Southeast ¼ of Section 30, Township 30 North, Range 6 East; W.M. Except the East 30 feet; and EXCEPT road known as Lake Cassidy-Hartford Road; Situated in the County of Snohomish, State of Washington.[14]
¶ 16 We agree with the County's determination that the above legal description is "not by reference to a subdivision plat." That is undisputed.
¶ 17 It appears from Nagle's arguments that he does not truly challenge the above facts, all of which are supported by substantial evidence in the record. Rather, it appears that he argues that the County's use of the above facts does not support its land use decision. We address this argument later in this opinion. But to the extent Nagle argues that the above facts are not supported by substantial evidence, we reject the contention as unpersuasive.

ERRONEOUS INTERPRETATION OF THE LAW
¶ 18 The County also argues that it correctly interpreted the phrase "actual notice" when it denied Nagles request for relief as an innocent purchaser under governing law. We hold that actual notice for purposes of the statute before us includes express knowledge of the illegal subdivision of property.
¶ 19 "Statutory interpretation involves questions of law that we review de novo."[15] In construing a statute, our objective is determining the legislature's intent.[16] "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain *919 meaning as an expression of legislative intent."[17] We discern a statutory provision's "plain meaning" from the "ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole."[18]
¶ 20 The subdivision statutes do not define the phrase "innocent purchaser for value without actual notice." But the context of the statute indicates that it essentially codifies the well recognized principle of bona fide or good faith purchaser.[19] Blacks Law Dictionary currently defines "actual notice" as "notice given directly to, or received personally by, a party."[20] Actual notice is distinct from constructive notice.[21] Whether the County erroneously interpreted the law is a question of law that we review de novo.[22]
¶ 21 Here, the County expressly stated in its written decision denying innocent purchaser status to Nagle that it "considered the concept of `express notice' as a class of actual notice" and applied that concept to the facts of this case. Two cases are helpful in determining whether the County's interpretation of the law in this case is correct.
¶ 22 In Murphy v. City of Seattle, this court determined that a purchaser of real property was not bound by a written stipulation regarding that property that a prior owner had entered into with the City of Seattle.[23] The stipulation was filed in the clerk's office of the court as part of a lawsuit.[24] It was also on file with the city's zoning department, but it had never been recorded with the county auditor.[25] Because it had not been recorded with the auditor, this court held that the subsequent purchaser did not have constructive notice of the document.[26]
¶ 23 This court went on to consider whether the subsequent owner had actual notice of the unrecorded stipulation. Murphy, the purchaser of the property who sued the City, disclaimed any knowledge of the nature of the lawsuit leading to the stipulation, the stipulation itself, or the parties.[27] Public notices of the underlying dispute were posted, although the case does not specify where.[28] And reports of the controversy underlying the stipulation had appeared on the front page of a community newspaper.[29] Notwithstanding these facts, this court held that the record in that case "[did] not provide a sufficient basis to support a finding of actual notice."[30]
¶ 24 A Massachusetts case also warrants consideration in our determination of the meaning of actual notice, particularly as that term is distinguished from constructive notice. In Mister Donut of America, Inc. v. Kemp,[31] the issue was whether a `notice of *920 lease' that was recorded in the land records must refer to an option to purchase that was contained in the actual lease in order to give subsequent persons dealing with the property notice of the option.[32] Under the statute before the court, a lease for more than seven years was not valid against any person except the lessor, his heirs and devisees and persons having actual notice of the lease unless a notice of lease was recorded.[33] A dispute arose between the assignee of the lessee of the lease and the grantee of the lessor. The grantee of the lessor acted in good faith, but had been shown a photocopy of the actual lease that did fully disclose the option. That court held that the grantee of the lessor did not have actual notice of the option to purchase that the assignee asserted.[34] However, the court also held that the grantee did have constructive notice of the option in the lease.
¶ 25 We hold that the plain words of the statutes before us and the context make clear that actual notice"actual knowledge or notice given to a party directly, not arising from any inference, duty, or inquiry"is required of the purchaser for value to disqualify that person from being an innocent purchaser. The actual notice that such a purchaser must have is of the illegal subdivision. Nagle does not argue, and we do not hold, that the purchaser must know at the time of the transaction that the subdivision is illegal. Rather, the purchaser must have actual knowledge at the time of the transaction that there is a subdivision of property.
¶ 26 Here, there is no dispute that Nagle is a "purchaser for value" within the meaning of the innocent purchaser statute. Our focus, then, is on whether he is such a purchaser without "actual notice" of the illegal subdivision of the property that arose from the January 1982 purchase from his parents.
¶ 27 Our examination of the record leads us to conclude that, in this case, the County correctly identified the proper standard in defining actual notice. Thus, it did not erroneously interpret the law. Accordingly, there is no basis for Nagle's challenge to the County's decision under this subdivision of LUPA.

Erroneous Application of the Law to the Facts
¶ 28 Nagle's final argument is that the County erroneously applied the law to the facts of this case. We disagree.
¶ 29 Whether the County "has made a clearly erroneous application of law to the facts" is determined by whether "we are left with the definite and firm conviction that it committed a mistake."[35] Having considered the record, the substantial evidence supporting the factual determinations of the County, and the correct definition of the term "actual notice," we conclude that the County was not mistaken when it rejected Nagle's request for innocent purchaser status.
¶ 30 Here, Nagle submitted a sworn statement to support his request for innocent purchaser status. The statement alleges that he did not know at the time of the 1982 purchase that parcel B had been illegally subdivided. The same statement acknowledges that he later learned that the subdivision violated state and county law.
¶ 31 The sworn statement of Nagle does not, of course, end the inquiry. Rather, it is one of the factors that the County may consider in making its land use decision. The ultimate question is whether in January 1982 Nagle had"actual knowledge or notice ..." where such notice did not arise from any "inference, duty, or inquiry."[36] We hold that he did have such knowledge.
¶ 32 We start with the undisputed fact that Nagle's parents acquired a tract of land in 1961 that included both parcel B, which Nagle purchased in 1982, as well as the contiguous parcel directly to the north, which Nagle purchased from them in 1974. The legal *921 description of parcel B that is set forth in the January 1982 real estate contract that both Nagle and his parents signed states:

The West 150 feet of the South ½ of the West ½ of the East ½ of the Southwest ¼ of the Southeast ¼ of Section 30, Township 30 North, Range 6 East; W.M. Except the East 30 feet; and EXCEPT road known as Lake Cassidy-Hartford Road; Situated in the County of Snohomish, State of Washington.[[37]]
¶ 33 Nagle, as a signer of that real estate contract is charged with having read the document and knowing its contents.[38]
¶ 34 Likewise, it is undisputed, that Nagle purchased from his parents in 1974 the property contiguous to and north of parcel B. The legal description of that property contiguous to and north of parcel B is set forth in the July 1974 real estate contract that both Nagle and his parents signed:

The North ½ of the West ½ of the East ½ of the Southeast ¼ of the Southeast ¼ of Section 30, Township 30 North, Range 6 East; W.M. Except the East 30 feet; and EXCEPT road known as Lake Cassidy-Hartford Road; Situated in the County of Snohomish, State of Washington.[[39]]
¶ 35 Nagle, as a signer of that real estate contract is charged with having read the document and knowing its contents.[40]
¶ 36 Comparison of the legal descriptions of the two contracts, both of which Nagle signed, makes clear that the January 1982 transaction subdivided the north ½ and south ½ of the larger property, to make parcel B. The legal descriptions also make clear that neither is in terms of lots or plats. Rather, the January 1982 contract expressly divides a larger parcel into a smaller one in terms of fractional units. That subdivision is illegal.
¶ 37 We note further that these documents merely confirm the obvious: the 1974 and 1982 transactions subdivided the larger parcel that Nagle's parents originally acquired in 1961. It strains credulity to believe that Nagle did not know from his 1974 purchase the obvious: the property his parents purchased in 1961 was being subdivided. Moreover, it strains credulity that Nagle was unaware from his January 1982 purchase of parcel B that a further subdivision was taking place. Both subdivisions were illegal under the subdivision laws, although only the January 1982 subdivision is at issue in this case.
¶ 38 We acknowledge that there is an excise tax affidavit in the record, presumably one of the documents prepared and executed in connection with the 1982 purchase. The affidavit has a section in it that deals with questions that we now address. The affidavit poses the following questions: "Does this conveyance divide a current parcel of land?" "If yes, does this conveyance comply with state and local subdivision laws?" Another question states "If sale involves more than one county tax parcel, will property be used as a single parcel?"[41] The questions were not answered.
¶ 39 Unlike the real estate contracts that Nagle executed, it does not appear that he executed the excise tax affidavit. Thus, there is no direct evidence in the record that he either knew of the contents of this excise tax affidavit or declined to answer the questions listed on it. We will not speculate on what, if any, communications about these questions were made to or by Nagle at the time of the transaction.
¶ 40 Nevertheless, actual knowledge of the contents of the two real estate contracts together with common sense dictate that Nagle had actual knowledge that parcel B was being subdivided by virtue of his January 1982 purchase from his parents. This is fatal to his claim to innocent purchaser status.
¶ 41 In sum, there is nothing in this record to support the argument that the County erroneously applied the law to the facts of this case.
*922 ¶ 42 We reverse the order compelling lot status.
WE CONCUR: BECKER and GROSSE, JJ.
NOTES
[1] RCW 58.17.210; see Murphy v. City of Seattle, 32 Wash.App. 386, 393, 647 P.2d 540 (1982) (holding that a subsequent purchaser of land that was affected by an unrecorded written stipulation did not have actual notice of the stipulation despite the posting of public notices and articles in a community newspaper about the underlying dispute); see also Mister Donut of America, Inc. v. Kemp, 368 Mass. 220, 330 N.E.2d 810 (1975) (holding that knowledge of facts which would ordinarily put a party on inquiry is not enough to meet statutory actual notice requirement).
[2] RCW 58.17.210; Snohomish County, Code sec. 30.41A.830 (emphasis added).
[3] In its briefing, the County makes several procedural arguments regarding alleged errors by the superior court in dealing with LUPA. At oral argument, the County represented that we need not address those arguments. Rather, both parties to this appeal asked that we reach the substantive issues. Exercising our discretion, we deal only with the substantive issues that the parties argue and expressly decline to address other arguments in the briefs. RAP 1.2(a).
[4] RCW 36.70C.130 provides in relevant part:

(1) The superior court, acting without a jury, shall review the record and such supplemental evidence as is permitted under RCW 36.70C.120. The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are: ...
...
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts; (emphasis added).
[5] Swoboda v. Town of La Conner, 97 Wash.App. 613, 617, 987 P.2d 103 (1999), review denied, 140 Wash.2d 1014, 5 P.3d 9 (2000).
[6] Wilson v. Employment Sec. Dep't, 87 Wash.App. 197, 200, 940 P.2d 269 (1997).
[7] Biermann v. City of Spokane, 90 Wash.App. 816, 821, 960 P.2d 434 (1998) (citing Wilson, 87 Wash.App. at 201-02, 940 P.2d 269).
[8] Wilson, 87 Wash.App. at 203, 940 P.2d 269.
[9] Schofield v. Spokane County, 96 Wash.App. 581, 586, 980 P.2d 277 (1999).
[10] Parcel B is also called "4-029," a reference to its current tax parcel number. The parcel is directly west of tax parcel 4-008. Both of these contiguous parcels lie directly south of tax parcel 4-017, which Nagle also purchased from his parents in July 1974.
[11] Clerk's Papers at 38-39.
[12] Schofield, 96 Wash.App. at 586, 980 P.2d 277.
[13] "Metes and bounds" descriptions describe the subject land by a series of "calls," each call containing two elements, a "course" or "bearing" and a "distance." Each call describes a line that begins at a known point and extends to the point at the end of that line.... The bearing of each call is stated in one of the cardinal directions, north, east, south, or west, plus the degrees the bearing is declined toward the next cardinal direction. 18 William B. Stoebuck & John W. Weaver, Washington Practice, Real Estate: Transactions § 13.3 at 92 (2d ed.2004).
[14] (Emphasis added.)
[15] State v. Jacobs, 154 Wash.2d 596, 115 P.3d 281, 283 (2005) (citing Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002)).
[16] Jacobs, 115 P.3d at 283.
[17] Jacobs, 115 P.3d at 283.
[18] Washington Public Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 645, 62 P.3d 462 (2003); Campbell & Gwinn, 146 Wash.2d at 10-12, 43 P.3d 4.
[19] Bona fide purchaser: One who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title. Black's Law Dictionary at 1271 (8th ed.2004).
[20] Black's Law Dictionary at 1090 (8th ed.2004).
[21] Constructive notice: Notice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of, such as a registered deed or a pending lawsuit; notice presumed by law to have been acquired by a person and thus imputed to that person. Black's Law Dictionary at 1090 (8th ed.2004).
[22] Lakeside Industries v. Thurston County, 119 Wash.App. 886, 894, 83 P.3d 433 (citing Schofield v. Spokane County, 96 Wash.App. 581, 980 P.2d 277 (1999)), review denied, 152 Wash.2d 1015, 101 P.3d 107 (2004).
[23] 32 Wash.App. at 393, 647 P.2d 540.
[24] Murphy, 32 Wash.App. at 392, 647 P.2d 540.
[25] Murphy, 32 Wash.App. at 392-93, 647 P.2d 540.
[26] Murphy, 32 Wash.App. at 393, 647 P.2d 540.
[27] Murphy, 32 Wash.App. at 393, 647 P.2d 540.
[28] Murphy, 32 Wash.App. at 393, 647 P.2d 540.
[29] Murphy, 32 Wash.App. at 393, 647 P.2d 540.
[30] Murphy, 32 Wash.App. at 393, 647 P.2d 540.
[31] 368 Mass. 220, 330 N.E.2d 810 (1975).
[32] Mister Donut, 330 N.E.2d at 812.
[33] Mister Donut, 330 N.E.2d at 813 n. 2.
[34] Mister Donut, 330 N.E.2d at 812-13.
[35] Lakeside, 119 Wash.App. at 894, 83 P.3d 433 (citing Schofield, 96 Wash.App. at 586, 980 P.2d 277).
[36] See express notice, Black's Law Dictionary at 1090 (8th ed.2004).
[37] (Emphasis added.)
[38] Skagit State Bank v. Rasmussen, 109 Wash.2d 377, 381, 745 P.2d 37 (1987)
[39] (Emphasis added.)
[40] Skagit State Bank, 109 Wash.2d at 381, 745 P.2d 37.
[41] (Emphasis added.)