[No. 38251-9-I.    Division One.    May 12, 1997.]

FREDERICK WILSON, *Appellant*, v. THE EMPLOYMENT
SECURITY DEPARTMENT, *Respondent*.

*Matthew J. Bean*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Keith D. Armstrong, Assistant*, for respondent.

ELLINGTON, J. — Frederick Wilson was manager of a jewelry store. He was discharged for losing diamonds from the store's inventory. At issue is whether the Commissioner of the Employment Security Department ("the Commissioner") erred by denying unemployment benefits on the ground that the discharge was for misconduct connected with Wilson's work. We find that the acts of negligence upon which Wilson's dismissal was based do

not constitute willful disregard of his employer's interest and we reverse the denial of benefits.

## *FACTS*

For about a year and a half prior to his discharge, Frederick Wilson managed a jewelry store owned by Sterling, Inc. Wilson had 17 years' experience in retail jewelry management.

Two incidents led to Wilson's discharge, although it appears from the record that his dismissal was based to a greater degree on the second incident. The first incident occurred in August, 1994, after Wilson had received five loose diamonds from a vendor. Upon receipt of the diamonds, Wilson failed to log them into his stock and failed to perform a daily diamond count. Because of this, one of the diamonds, valued at over $900, was lost. In a written statement, Wilson said:

> I am not aware of what has happened to this stone, but am aware this would not have happened if the diamonds had been logged and properly counted. I realize that by my above described actions, I have violated company policy in that I was negligent in my handling of loose diamonds from a vendor.

The second incident occurred on February 3, 1995. On that date, a fellow employee gave Wilson a loose diamond valued at $490. The diamond was in a clear plastic bag. Wilson placed the bag on his desk. At the time, there were several empty clear plastic bags lying on his desk. Later, Wilson cleared his desk of the plastic bags and, in so doing, threw away the bag containing the diamond. In his written statement, Wilson states that at the time he placed the bag containing the diamond on his desk, he realized that "the diamond should have gone into the safe, but it did not." Wilson also stated: "I realize that by my above described actions, I have violated company policy and that I was negligent in my handling of this loose diamond."

Wilson was terminated from his employment on March 7, 1995, soon after the second incident, and applied for unemployment benefits. Benefits were allowed on the ground that Wilson's actions were not deliberate and thus misconduct was not established. The employer appealed. After a hearing, the administrative law judge denied benefits on the ground that Wilson's actions leading to his discharge amounted to misconduct under RCW 50.20.060. Wilson petitioned for review, asserting that he did not intentionally lose the diamonds, but rather "simply made a mistake." The Commissioner adopted the administrative law judge's findings of fact and conclusions of law and affirmed the denial of benefits on the ground that Wilson was discharged for misconduct and thus was ineligible for benefits. Wilson appealed to superior court, which affirmed, finding that "claimant's conduct presented in the record rises to the level of disqualifying misconduct as defined by RCW 50.04.293 and [claimant] is thus disqualified from benefits pursuant to RCW 50.20.060."

## DISCUSSION

■ In reviewing an administrative decision, the appellate court stands in the same position as the superior court. *Penick v. Employment Sec. Dep't*, 82 Wn. App. 30, 37, 917 P.2d 136, *review denied*, 130 Wn. 2d 1004 (1996). Thus, we apply the appropriate standard of review directly to the administrative record. *Snohomish County v. State*, 69 Wn. App. 655, 664, 850 P.2d 546 (1993), *review denied*, 123 Wn. 2d 1003 (1994).

■ ■ Relief from an agency order in an adjudicative proceeding will be granted if, inter alia, the agency has erroneously interpreted or applied the law, RCW 34.05.570(3)(d); the order is not supported by substantial evidence, RCW 34.05.570(3)(e); or the order is arbitrary or capricious, RCW 34.05.570(3)(i). Thus, factual findings are reviewed under the substantial evidence standard, under which there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the

declared premise is true. *Penick v. Employment Sec. Dep't*, 82 Wn. App. at 37. Conclusions of law are reviewed under the error of law standard. We give great deference to the Commissioner's factual findings and substantial weight to the agency's interpretation of the law. *Penick*, 82 Wn. App. at 37-38.

■ The determination of whether an employee's behavior constitutes misconduct is a mixed question of law and fact. *Tapper v. Employment Sec. Dep't*, 122 Wn. 2d 397, 402, 858 P.2d 494 (1993). In reaching this determination, the court should give the agency's factual findings the same level of deference to which they are entitled under any other circumstance, but the process of applying the law to the facts is a question of law subject to de novo review. *Tapper*, 122 Wn.2d at 403. At issue in the present case is whether the facts, as applied to the law, constitute misconduct. We review this issue de novo and conclude that they do not.

Under the Employment Security Act, an individual is disqualified from benefits if he or she was discharged "for misconduct connected with his or her work." RCW 50.20.060. Misconduct is "an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business." RCW 50.04.293.

■ To date, there has been no judicial construction of the statutory definition of misconduct, and in particular the portion of the definition that refers to an employee's actions or inactions "in willful disregard of his or her employer's interest."[1] We find that, although written without the statutory definition in mind, the fourth part of the test of misconduct as set forth in *Tapper* provides guidance for interpreting this portion of the statutory def-

---

[1]We note that *Keenan v. Employment Sec. Dep't*, 81 Wn. App. 391, 914 P.2d 1191 (1996), was decided under this statute. However, the court's opinion does not contain a helpful discussion of the statutory definition nor does it offer a test or other method of analysis for determining whether an employee's conduct constitutes misconduct.

inition. Under that part of the test, in order to constitute misconduct, an employee's violation of an employer's rule "must be intentional, grossly negligent, or continue to take place after notice or warnings." *Tapper*, 122 Wn.2d at 409. Behavior that is mere incompetence, inefficiency, erroneous judgment, or ordinary negligence does not constitute misconduct for purposes of denying unemployment compensation. *Tapper*, 122 Wn.2d at 409.

Judging Wilson's conduct under these principles, we find no misconduct. There is no evidence in the record to show that Wilson acted with a deliberate intent to violate his employer's policy or in willful disregard of his employer's interest. There is no evidence that Wilson acted out of an intent to cause his employer harm. Rather, the only intent on Wilson's part shown by the record is, simply put, an intent to do what he did, namely to delay logging in five loose diamonds on one occasion and to delay putting another loose diamond into the safe. These acts were, by Wilson's own admission, in violation of the employer's policy. However, at most they amounted to negligence, incompetence, or an exercise of poor judgment. This is not enough to constitute misconduct under RCW 50.04.293.

Further, the record does not support a determination that Wilson's violation of his employer's policy "continue[d] to take place after notice or warnings." *Tapper*, 122 Wn.2d at 409. In *Tapper*, the employee had been suspended for insubordination and disruptive behavior. Upon her return to work, she and her supervisor executed a document entitled "Notice of Remedial Action" which outlined a number of behavioral goals for her and, significantly, "indicated that a failure to achieve these goals could trigger further suspension or even termination." *Tapper*, 122 Wn.2d at 400. The Commission found that the employee was repeatedly warned regarding her failure to meet the requirements of the notice of remedial action. The Supreme Court held "that this behavior cannot be characterized as mere incompetence or inefficiency, and

that it therefore satisfies [the fourth part of the test of misconduct requiring that the violation continue to take place after notice or warnings.]" *Tapper*, 122 Wn.2d at 411. By contrast, in the present case, there is no evidence Wilson was warned after the first incident that if he lost another diamond he would be suspended or terminated.

This is not a case where a rule or policy requires that a loose diamond be logged or placed in the safe within a specific number of minutes after an employee receives it, at least so far as the record before us reveals. Had such a policy existed and Wilson deliberately chosen not to act within the time specified because, for example, he disputed the necessity of so acting, then a finding of misconduct under the statute would be easier to make. Rather, it appears that Wilson's employer's policy required only that a loose diamond be placed in the safe within an unspecified time after receipt. A reasonable interpretation of this requirement is that a diamond must be placed in the safe as soon as possible after receipt. We find nothing in the record to show that Wilson made a deliberate decision to act in defiance of the policy. Rather, it appears that Wilson fully intended to comply with the policy, but simply failed to do so in time to prevent the losses. Actions or failures to act that are simply negligent, and not in defiance of a specific policy, do not constitute misconduct in the absence of a history of repetition after warnings. The rule applied by the Commissioner would require denial of benefits to any employee who twice negligently delayed immediate compliance with company policy regardless of the reason and despite a good faith intent to comply. Here, there was one "repetition," but no specific warnings.

■ The fact that Wilson's acts might have been sufficient grounds to justify his discharge from employment does not mean that they were sufficient grounds to constitute statutory misconduct and disqualify him from unemployment benefits. The distinction between conduct which will justify a discharge and conduct which will support a denial of unemployment compensation on miscon-

duct grounds was illustrated in *Ciskie v. Department of Employment Sec.*, 35 Wn. App. 72, 664 P.2d 1318 (1983). In that case, the employee was denied benefits on the ground that he had been discharged for misconduct, namely violation of company policy requiring an employee to notify a supervisor prior to leaving the worksite. The discharge stemmed from the employee's decision to return home to respond to a family emergency. He was unable to locate a supervisor prior to leaving. The employee knew that his supervisor had not yet arrived at work and that his supervisor's supervisor was on vacation. He asked a fellow employee to explain the emergency to his supervisor when he arrived. Also, as he was leaving, the employee searched the parking lot for a car belonging to yet another supervisor, but did not see it. The employee then left the worksite without informing a supervisor.

In its opinion reversing the denial of unemployment compensation under RCW 50.20.060, the court agreed with the employer that its policy requiring notification of supervisors before leaving the worksite was reasonable, and found that the employer was clearly justified in terminating the employee for violating this policy. However, the court noted that "[g]ood cause is not to be equated with misconduct disentitling the worker to benefits." *Ciskie v. Department of Employment Sec.*, 35 Wn. App. at 76. The court found the employee's deviation from the proper notification procedure reflected poor judgment or negligence, but the fact that he attempted to comply with the rule dispelled any inference that his conduct was motivated by bad faith or a lack of care about the consequences of his actions.

Similarly, in the present case, it is reasonable to characterize Wilson's failure to log in the loose diamonds, and his placement of the plastic bag containing a diamond on his desk in the midst of empty plastic bags, as negligent or in poor judgment. Indeed, Wilson himself characterizes his conduct as negligent. However, the record is devoid of any evidence to suggest that Wilson was motivated by

defiance, bad faith or indifference to the consequences of his actions. Wilson's conduct certainly justifies his discharge, but it did not rise to the level of statutory misconduct. Thus, Wilson was erroneously disqualified from receiving unemployment compensation.

The Commissioner's decision denying Wilson unemployment compensation is reversed.

BAKER, C.J., and WEBSTER, J., concur.