# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DENISE FUGATE, | No. 47349-6-II |
| Respondent, | |
| v. | |
| EMPLOYMENT SECURITY DEPARTMENT OF THE STATE OFWASHINGTON STATE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. —The Employment Security Department appeals a superior court order reversing the Department Commissioner's finding that Printcom terminated its employee, Denise Fugate, for committing misconduct, which disqualified her from receiving unemployment benefits.[1] On appeal, Fugate argues that (1) substantial evidence does not support the Commissioner's findings

---

[1] Fugate appealed the Commissioner's ruling to the superior court; therefore, although the Department appealed the superior court's order to this court, Fugate filed the opening and reply briefs with this court. *See* General Order 2010-1 of Division II, *In re Modified Procedures For Appeals Under The Administrative Procedures Act, Chapter 34.05 and Appeals Under The Land Use Petition Act, Chapter 36.70C* (Wash. Ct. App.), available at: http://www.courts.wa.gov/appellate_trial_courts, providing "that the party filing an appeal in superior court under APA . . . shall have responsibility for the opening and reply briefs before our court, and shall be entitled to open and conclude oral argument, whether designated as the appellant or respondent on appeal to this court."

that Fugate (a) misled her employer regarding her injury, and (b) acted in defiance of her employer's instructions. She further argues that (2) the Commissioner erroneously applied the law to the facts when he concluded that Fugate (a) deliberately acted in violation of her employer's interest, (b) was willfully insubordinate, and (c) did not commit a good faith error in judgment when she disregarded her employer's instructions. We reverse the superior court and affirm the Commissioner's ruling.

FACTS

Denise Fugate began working full time for Printcom in April 2013. On Thursday, October 10, 2013, Fugate strained her back muscles lifting a box. At Judy Coovert's[2] direction, Fugate went to the doctor for an evaluation. The doctor gave Fugate a written note, which stated that for the next three days, Fugate should not lift, push, or pull more than 10 pounds, and should rarely lift, push, or pull more than 5 pounds. After seeing the doctor, Fugate returned to work and gave the doctor's note to her employer who sent Fugate home for the remainder of Thursday.

Jeri Melton, Printcom's office manager, wrote instructions and tasks that Fugate could do on Friday, and attached them to Fugate's time card Thursday evening. Fugate returned to work Friday, October 11, 2013. Shortly after returning to work, Fugate and Jim Coovert reviewed the doctor's note and Melton's written instructions.

The written instructions stated the following, in relevant part:

No pushing carts with anything on them, no picking up/lifting any stacks of paper heavier than 4 lbs or anything else besides paper, or picking anything up to ship

___

[2] Judy Coovert is the corporate secretary treasurer of Printcom. We use Judy's first name because she shares the last name of another involved party, Jim Coovert, the president of Printcom. No disrespect is intended.

that's over 4 lbs. . . . Let me know if you need something to do, or if you have any questions.

Administrative Record (AR) at 64.

After reviewing the employer's instructions, Fugate began performing her regular job duties. Melton saw Fugate lifting items weighing approximately 15 pounds, and reminded Fugate of the employer's instructions. Fugate acknowledged to Melton that she received Jim's instructions and said, "Chill." AR at 19. Melton then saw Fugate lifting items in excess of 40 pounds, and Fugate said to Melton, "You didn't see that." AR at 19. Melton confronted Fugate about not following instructions and showed her the written instructions.

Other employees reported to Judy that Fugate was not following the employer's instructions. Judy then asked Fugate whether she was following the employer's instructions, and Fugate said that she was. Employees later reported to Judy that Fugate was continuing to not follow instructions, and then Judy witnessed Fugate pushing carts loaded with stacks of paper. At that point, Judy told Fugate that she was "doing exactly what you're not supposed to do" and sent her home. AR at 20. Later that day, Printcom terminated Fugate's employment.

Fugate applied for unemployment benefits. The Employment Security Department found that Fugate was ineligible for unemployment benefits because she committed misconduct. Fugate petitioned for an administrative law judge (ALJ) to review the Department's determination. Fugate testified before the ALJ that she lifted items exceeding the imposed weight limit, but explained that she did so because she was no longer in pain and was afraid that her job would be in jeopardy if she did not demonstrate her physical ability to perform her job duties. The ALJ reversed the Department's decision, finding that the employer did not prove misconduct, and that

3

Fugate "wanted to prove to herself and to her employer that she was not hurt." AR at 75. The ALJ also found that although Fugate exercised "poor judgment, mitigating circumstances were present." AR at 75.

Printcom petitioned the Department's Commissioner for review of the ALJ's decision. AR at 85-89. The Commissioner reversed the ALJ's decision, finding that the employer met its burden to prove misconduct under RCW 50.04.294(1)(b) and RCW 50.04.294(2)(a). The Commissioner adopted the ALJ's findings of fact and conclusions of law, except for its conclusion that Fugate did not commit misconduct. The Commissioner also supplemented some of the ALJ's findings with its own. Fugate appealed to the Thurston County Superior Court, which adopted the Commissioner's findings, but reversed because it found that Fugate's "actions reflect an error in judgment and not misconduct pursuant to RCW 50.04.294." Clerk's Papers at 31. The Department appeals the superior court's order.

## ANALYSIS

A.    LEGAL PRINCIPLES

1.  Standard of Review

The Washington Administrative Procedure Act (WAPA) governs judicial review of the Department Commissioner's decisions. RCW 50.32.120. Under WAPA, "[t]his court sits in the same position as the superior court." *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 178 Wn.2d 363, 372, 309 P.3d 416 (2013). We review the Commissioner's decision, not the underlying decision of the ALJ, except to the extent that the Commissioner adopts the ALJ's findings of fact. *Kirby v. Emp't Sec. Dep't*, 179 Wn. App. 834, 843, 320 P.3d 123, *review denied*, 181 Wn.2d 1004 (2014). We consider the Commissioner's decision to be prima facie correct.

*Kirby*, 179 Wn. App. at 843. Fugate, as the party seeking to overturn the Commissioner's decision, bears the burden of demonstrating that the Commissioner's decision is invalid. *King County Pub. Hosp.*, 178 Wn.2d at 372.

"We may reverse the commissioner's decision if it is based on an error of law, or substantial evidence does not support the decision." *Kirby*, 179 Wn. App. at 843. "We review questions of law de novo and give substantial weight to the agency's interpretation of the statutes it administers." *Id*. Findings of fact are reviewed for substantial evidence in light of the whole record. *Id*. "Evidence is substantial if it is of sufficient quantity 'to persuade a fair-minded person of the truth or correctness of the [agency] order.'" *Affordable Cabs, Inc. v. Emp't Sec. Dep't*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004) (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998)). Unchallenged factual findings are verities on appeal. *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 573, 326 P.3d 713 (2014).

2. Misconduct

An individual discharged for misconduct connected to her work cannot receive unemployment benefits. RCW 50.20.066(1). Misconduct includes: "Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee." RCW 50.04.294(1)(b). Further, "[i]nsubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer" is "considered misconduct because [it] signif[ies] a willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." RCW 50.04.294(2)(a), .294(2). However, misconduct does not include "[i]nadvertence or ordinary negligence in isolated instances," or "[g]ood faith errors in judgment or discretion." RCW 50.04.294(3).

In determining whether an employee's behavior constitutes disqualifying misconduct, we apply the substantial evidence standard to the challenged findings of fact, determine the applicable law, and apply the law to the facts. *Michaelson v. Emp't Sec. Dept.*, 187 Wn. App. 293, 299, 349 P.3d 896 (2015); *accord Campbell*, 180 Wn.2d at 573. We view the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum exercising fact-finding authority, here, the Commissioner. *Affordable Cabs*, 124 Wn. App. at 367. The Department prevailed before the Commissioner. Therefore, we view the evidence and reasonable inferences in the light most favorable to the Department.

B.      SUBSTANTIAL EVIDENCE[3]

1.      Fugate Misled the Employer

Fugate challenges the Commissioner's finding that she misled her employer, claiming that the only testimony supporting the finding is hearsay and was improperly relied upon. However, we do not address whether the finding is supported or whether the Commissioner improperly relied on hearsay because the finding does not affect the misconduct analysis.

Fugate acknowledges that this challenged finding is not relevant to the outcome of this appeal. In her reply brief, Fugate notes that the Commissioner's finding "undermined Ms. Fugate's

---

[3] Fugate asserts that the following findings are unsupported by substantial evidence: Fugate told her employer she was fine while still experiencing back spasms; Fugate was admonished to not lift items more than five pounds, and that Fugate was sent home and fired after the employer observed her lifting beyond her restrictions. However, while Fugate asserts that these specific findings are not supported by substantial evidence, Fugate fails to provide any arguments relating to these findings. Instead, Fugate argues that the Commissioner "lacked substantial evidence to support its finding that Ms. Fugate misled her employer about her injury" and "lacked substantial evidence to infer Ms. Fugate's knowledge and deliberate disregard of her employer's instructions and standards." Br. of Resp't at 21, 23 (underlining omitted). This opinion addresses the two arguments she presents in her brief, which do not align with Fugate's asserted challenges.

credibility without purpose" because "how she reported her injury to her employer was not the reason for her termination and does not bear on her eligibility for benefits."[4]  Reply Br. of Resp't at 12.  Therefore, we do not address the challenge because, as Fugate acknowledges, it is not relevant to the outcome of this appeal.  *See Stratton v. Stratton*, 53 Wn.2d 558, 561-62, 335 P.2d 39 (1959) (declining to address assignments of error that are "of insufficient importance to affect the outcome of this appeal").

1.      Substantial Evidence Supports the Findings of Fact

Fugate argues that substantial evidence does not support the Commissioner inferring from the record that Fugate "lift[ed] beyond her restrictions again."[5]  Br. of Resp't at 24.  We disagree.

The Commissioner's finding that "the employer observed [Fugate] lifting beyond her restrictions again" is supported by substantial evidence.  AR at 95-96.  The employer's instructions, in part, stated, "No pushing carts with anything on them, no picking up/lifting any stacks of paper heavier than 4 lbs or anything else besides paper, or picking anything up to ship

---

[4] Fugate appears to challenge the finding because "[t]he State should not be supported in its attempt to call Ms. Fugate a liar with impunity."  Reply Br. of Resp't at 12.  To the extent that the Commissioner's finding reflects his assessment of Fugate's credibility, we defer to the Commissioner's assessment and do not substitute its judgment on witnesses' credibility. *Michaelson*, 187 Wn. App. at 299.

[5] Fugate's heading states: "The Commissioner lacked substantial evidence to infer Ms. Fugate's knowledge and deliberate disregard of her employer's instructions and standards."  Br. of Resp't at 23 (underlining omitted).  Fugate fails to offer argument regarding the statement.  However, to the extent that she raises an issue of whether she was aware of the employer's instructions, that argument fails.  Fugate does not challenge the Commissioner's findings that the employer gave Fugate the instructions orally and in writing.  Moreover, Fugate does not challenge the Commissioner's finding that Fugate received the instructions and the evidence shows Fugate acknowledged that she received the employer's instructions.  Unchallenged findings are verities are appeal.  Therefore, Fugate was aware of the employer's instructions and expectations.

that's over 4 lbs." AR at 64. The employer testified that Jim reviewed the instructions and the doctor's note with Fugate shortly after she returned to work. After this review, Melton saw Fugate lifting items weighing in excess of 40 pounds, admonished her for not following instructions and showed her the written instructions again. Fugate again violated the instructions later by pushing a cart with stacks of paper on it. Fugate does not challenge the Commissioner's findings that Fugate was lifting beyond her restrictions and was admonished before the employer witnessed Fugate pushing a loaded cart. Thus, substantial evidence supports the Commissioner's finding that "the employer observed [Fugate] lifting beyond her restrictions again." AR at 95-96.

Fugate also argues that the Commissioner's finding that pushing the cart violated the employer's restrictions was unsupported by substantial evidence because the weight of the cart was not established. This argument fails because the weight of the cart is not relevant. The employer's instructions state, "No pushing carts with anything on them." AR at 64. The employer did not argue that Fugate was terminated for pushing an empty cart. Therefore, the Commissioner did not need to establish the weight of the cart in order to establish that pushing a cart with items on it violated her employer's instructions.[6]

Also, Fugate does not dispute that she pushed a cart with items on it, which necessarily violated the employer's instructions. Fugate repeatedly asserts that she could push the cart with one finger and, therefore, did not believe that she was violating the employer's instructions. Fugate's argument conflates the *weight* of the cart with the *force* required to move the cart. The

---

[6] Furthermore, even if the weight of the cart was relevant, the employer testified that the cart weighs "[a]t least 20 pounds." AR at 20. And 20 pounds exceeds the weight restrictions included in both the employer's instructions and the doctor's instructions.

employer's instructions did not limit Fugate's activities based on the required force to push the cart; the employer limited the activity of pushing a cart with anything on it. Thus, the undisputed evidence showed that Fugate pushed a cart with stacks of paper on it in violation of the employer's instruction of "[n]o pushing carts with anything on them," and that Fugate pushed this cart after having been informed of employer's instructions regarding her work restrictions and admonished about her violating the employer's instructions. AR at 64. Substantial evidence supports the Commissioner's finding that Fugate "lift[ed] beyond her restrictions again." AR at 96.

Fugate further claims that the Commissioner's inference that Fugate "lift[ed] beyond her restrictions again" when she pushed the cart was "unsupported by substantial evidence in that it failed to determine the actual restrictions placed upon Ms. Fugate, and so failed to establish that Ms. Fugate's pushing a cart violated her restrictions at all." Br. of Resp't at 24-25. Again, Fugate's claim fails.

The employer's instructions state, "No pushing carts with anything on them." AR at 64. Furthermore, the employer testified about the instructions given to Fugate, and Fugate does not dispute that she received the employer's instructions. Thus, the record contains substantial evidence establishing the employer's instructions to Fugate, that Fugate was instructed not to push a cart with anything on it, and that she violated the employer's instructions.

C.    CONCLUSIONS OF LAW

Fugate argues that the Commissioner erred by concluding that Fugate committed disqualifying misconduct under RCW 50.04.294(1)(b) and RCW 50.04.294(2)(a). "We review a commissioner's legal conclusions for errors of law." *Markam Grp., Inc. v. Emp't Sec. Dep't*, 148 Wn. App. 555, 561, 200 P.3d 748 (2009).

1.      RCW 50.04.294(1)(b)—Deliberate Violations or Disregard of Standards

Fugate contends that the Commissioner erred by concluding that misconduct disqualified her from receiving unemployment benefits under RCW 50.04.294(1)(b).  We disagree.

RCW 50.04.294(1)(b) provides that misconduct includes "[d]eliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee."

Fugate asserts, without support, that she did not deliberately disregard her employer's standards.  Br. of Resp't at 27.  However, the findings show that the employer had specific written instructions about "what duties claimant could perform within her restrictions" that were attached to Fugate's timecard, that the employer's president repeated the instructions to Fugate and showed her the doctor's note, that Fugate was admonished for lifting boxes over the weight restriction in the instructions, and that Fugate was observed performing a task that violated her restrictions and was sent home.  AR at 94.  The findings also show that Fugate "moved a cart carrying a load with the total gross weight believed to be much greater than five pounds" and "admits she lifted some items that exceeded the weight limit."  AR at 74. Thus, the unchallenged findings support the conclusion that Fugate deliberately violated or disregarded her employer's instructions regarding her work restrictions.

Fugate also asserts that the Commissioner misapplied the law to the facts because "the Commissioner did not establish that she willfully disregarded the rights of her employer" and did "not act deliberately in violation of the employer's interests."  Br. of Resp't at 27.  Fugate claims that "[w]here an employee does not act out of a 'conscious intent to harm the employer when she refused to follow the employer's instructions," it is not misconduct."  Br. of Resp't at 28 (quoting *Kirby*, 179 Wn. App. at 837).  Fugate also claims that in order to establish misconduct, the

employer must demonstrate that "'the employee was aware that he or she was disregarding the [e]mployer's rights.'" Br. of Resp't at 28 (quoting *Kirby*, 179 Wn. App. at 847).

Fugate's arguments mirror the language of RCW 50.04.294(1)(a). *See also* WAC 192-150-205(1). However, the Commissioner did not find misconduct under RCW 50.04.294(1)(a). Rather, the Commissioner found misconduct under RCW 50.04.294(1)(b). Thus, the Commissioner cannot be held to have erred in reaching a conclusion of law that the Commissioner did not make.

2.      RCW 50.04.294(2)(a)—Insubordination

Fugate claims that her actions were not "*willfully insubordinate*." Br. of Resp't at 30. Specifically, she claims that the Commissioner "failed to establish the necessary facts to support its conclusion" that Fugate acted in defiance of the employer's instructions. Br. of Resp't at 32.

RCW 50.04.294(2)(a) provides that "[i]nsubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer" is misconduct.

The Commissioner did not err by concluding that Fugate committed disqualifying misconduct under RCW 50.04.294(2)(a). The Commissioner found, and the record demonstrates, that Fugate received the employer's specific instructions,[7] that Fugate was observed at least twice to be lifting items beyond the weight restrictions identified in the employer's instructions, that Fugate was reminded of and admonished for not following the employer's instructions, and that

---

[7] When Jim and Fugate reviewed the instructions on Friday morning, Fugate asserted that she could lift 30 pounds. Jim referenced the doctor's instructions, and reminded her that she could not "lift, pull or push more than 5 pounds." AR at 65.

11

Fugate was sent home after the employer observed her violating the employer's instructions for a third time. Further, Fugate testified, "I don't deny that I was lifting. I was doing my job." "I was trying to show them that I wasn't hurt," and "I made a judgment call." AR at 34, 36, 38. Thus, the record demonstrates that Fugate received and understood the employer's instructions, but that she made a conscious choice to not follow the instructions. Accordingly, the Commissioner did not err in concluding that Fugate committed disqualifying misconduct by engaging in insubordination showing a deliberate, willful or purposeful refusal to follow the reasonable directions of instructions of the employer.

Fugate argues that the Commissioner's finding that Fugate violated her restrictions by lifting in excess of five pounds indicates that the Commissioner found that she "had a lifting restriction of five pounds," but did not provide a "finding as to what Ms. Fugate's other restrictions were." Br. of Resp't at 32. Fugate argues that this is relevant because she was terminated for pushing a cart, "but it is not established whether she was instructed not to push any cart at all or merely no cart weighing more than five pounds." Br. of Resp't at 32. Therefore, Fugate argues, "it cannot be established whether she knowingly violated the instruction." Br. of Resp't at 32. As discussed above, Fugate's argument fails because the employer's instructions expressly forbade pushing a cart with anything on it, and the employer witnessed Fugate pushing a cart with things on it. Thus, the Commissioner did not err in concluding that Fugate committed disqualifying misconduct by deliberately, willfully or purposefully refusing to follow the employer's reasonable instructions.

12

D.      RCW 50.04.294(3)—NEGLIGENCE AND GOOD FAITH ERROR IN JUDGMENT

Fugate argues that the Commissioner erred by concluding that Fugate's actions do not fall within the good faith error in judgment exception to misconduct.  Fugate asserts that she made a mistake by disregarding her employer's instructions, but that it was an isolated instance of negligence and not misconduct.  We disagree.

1.  Isolated Instance

RCW 50.04.294(3)(b) states that misconduct does not include "[i]nadvertence or ordinary negligence in isolated instances."

Fugate argues that she did not engage in misconduct because her decision to continue working was an isolated mistake.  However, the record belies Fugate's contention that her disregard of her employer's instructions was an isolated instance.  The Commissioner found that

> The preponderance of the evidence in this case shows [Fugate] gave conflicting information about her health status to her employer . . . . [T]he employer sent [Fugate] for a medical evaluation. . . . When [Fugate] returned to work, the employer's witness specifically identified what duties she could perform within her restrictions in a written note attached to her timecard [sic].  Shortly after [Fugate] received the note, the employer's president repeated the instructions and showed her the doctor's note.  After witnessing [Fugate] lifting boxes well over her restriction limit of 5 lbs. (i.e. 15 lbs.), the employer's witness admonished [Fugate].  The employer learned [Fugate] continued to lift even heavier items (i.e.  70 lbs) and admonished her again.  A short time later, the employer observed [Fugate] lifting beyond her restrictions again.  At this point, the employer told [Fugate] to go home and she was discharged.

AR 95-96.

Fugate knew she was not to lift anything over five pounds and not to push a cart with anything on it. However, despite this knowledge, she was observed for violating her employer's instructions and admonished for it. Even after being admonished for violating her employer's instructions, Fugate was observed violating the instructions again. Fugate's violations of her employer's instructions were not isolated instances or inadvertence.

2. Good Faith Error In Judgment

RCW 50.04.294(3)(c) states that "[g]ood faith errors in judgment or discretion" do not constitute misconduct

Fugate argues that she made a good faith error in judgment because she felt no pain and "believed she could and should perform her regular job duties." Br. of Resp't at 34. Fugate essentially argues that RCW 50.04.294(3)(c) allows an employee to disregard an employer's instructions when the employee believes disregarding the instructions would be beneficial to the employee. Specifically, Fugate argues that RCW 50.04.294(3) allows an employee to substitute her own judgment regardless of the employer's instructions.

The record demonstrates that while Fugate held a subjective belief that she "could and should perform her regular job duties" because she believed "her job was in jeopardy," Br. of Resp't at 34, 37, it was her employer that issued written instructions restricting Fugate's job duties, reviewed those written instructions with Fugate, and admonished Fugate at least twice for violating those written instructions. Despite these admonishments, Fugate continued to violate the employer's instructions. While Fugate may have subjectively believed that she should perform her job duties, her repeated disregard of employer's instructions based on such a subjective belief

14

cannot be a "*[g]ood faith* error in judgment." Accordingly, the Commissioner did not err in concluding that Fugate committed disqualifying misconduct.[8]

Fugate cites *Wilson v. Employment Security Department*, 87 Wn. App. 197, 940 P.2d 269 (1997), although she offers no argument suggesting that *Wilson* supports her position that her behavior was a good faith judgment error. *Wilson* is distinguishable and analyzes the former version of the misconduct statute. In *Wilson*, the court held that the employee did not make "a deliberate decision to act in defiance" of the employer's policy; the employee "fully intended to comply" with the policy but failed to do so quickly enough to prevent the loss of merchandise. 87 Wn. App. at 203. Here, in contrast, the evidence shows that Fugate did not intend to comply with her employer's instructions. Instead, Fugate repeatedly ignored her employer's instructions because she felt she was physically capable of performing her usual tasks.

ATTORNEY FEES

Fugate requests reasonable attorney fees on appeal if she prevails. Because we reverse the superior court and affirm the Commissioner's decision, Fugate does not prevail. Therefore, we deny her request for attorney fees.

---

[8] RCW 50.04.294(3)(c) does not set forth "[g]ood faith error in judgment" as an exception to misconduct. Rather, the statute states that misconduct "does not include . . . [g]ood faith errors in judgment or discretion." RCW 50.04.294(3)(c). Therefore, by finding misconduct under RCW 50.04.294(1)(b) and (2)(a), the Commissioner, by implication, necessarily found that Fugate's actions did not constitute a good faith error in judgment.

No. 47349-6-II

We reverse the superior court and affirm the Commissioner's ruling.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J

Melnick, J.