IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL NEVLER, | ) | No. 76327-0-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | |
| STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, | ) ) ) | UNPUBLISHED OPINION FILED: January 16, 2018 |
| Respondent. | ) ) ) | |

BECKER, J. — Appellant was fired from his restaurant job for sitting down at a table with a customer, in violation of a policy against fraternization with customers. The Department of Employment Security denied his request for unemployment benefits on the basis that he was terminated for willful misconduct. We find no error in the commissioner's decision.

Appellant Michael Nevler was employed as a server at a restaurant from May 2007 until his termination on June 12, 2015. His application for unemployment benefits was denied. He appealed. An administrative law judge held a telephonic hearing at which three witnesses testified: Anthony Berkau, the employer's food and beverage director; Sara Fetters, the employer's human resources director; and Nevler.

At the hearing, the administrative law judge held the employer to the burden of proving work-related misconduct. Conclusion of Law 6, citing Yamamoto v. Puget Sound Lumber Co., 84 Wash. 411, 146 P. 861 (1915). The administrative law judge entered findings of fact and conclusions of law upholding the denial of benefits on the basis that Nevler intentionally violated a known, reasonable employer policy without excuse. The commissioner's review office adopted those findings and conclusions. See RCW 34.05.464. That decision was affirmed on review by the superior court. Nevler now appeals to this court.

This court sits in the same position as the superior court, reviewing the final administrative decision issued by the commissioner. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). "Judicial review of a final administrative decision of the Commissioner of the Employment Security Department is governed by the Washington Administrative Procedure Act." Tapper, 122 Wn.2d at 402. A reviewing court may reverse an administrative decision when: (1) the administrative decision is based on an error of law; (2) the decision is not based on substantial evidence; or (3) the decision is arbitrary or capricious. Tapper, 122 Wn.2d at 402. We apply the standards of the Washington Administrative Procedure Act, chapter 34.05 RCW, directly to the record before the agency. Tapper, 122 Wn.2d at 402. As the party challenging the agency action, Nevler carries the burden to show the commissioner's decision was in error. Campbell v. Emp't Sec. Dep't, 180 Wn.2d 566, 571, 326 P.3d 713 (2014), citing RCW 34.05.570(1)(a).

Whether an employee's behavior constitutes misconduct is a mixed question of law and fact. Tapper, 122 Wn.2d at 402. We give deference to the agency's factual findings. The process of applying the law to the facts is a question of law subject to de novo review. Tapper, 122 Wn.2d at 403.

The statutory definition of misconduct includes "Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." RCW 50.04.294(1)(a). When the employee's act is a violation of a company rule, it is considered misconduct under the statute "if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(f).

The following facts are undisputed. Nevler had previously been off work for some time due to an injury. On the night of the incident that led to his firing, he was working light duty. He was assisting the servers by selling wines to customers, taking wine inventory, refilling water glasses for diners, and performing other tasks he could do without repetitive bending or heavy lifting. A fellow server asked Nevler to assist a female customer with wine selection. Nevler sat down at the table with the customer to discuss the wine choices. The customer ultimately purchased a $100 bottle of wine.

Berkau heard from other employees that Nevler had spent over an hour sitting with the customer. After a brief investigation, Berkau made the decision to terminate Nevler for violating the establishment's antifraternization policy. Nevler had no prior discipline or issues related to violation of the fraternization ban. Berkau testified that he decided termination rather than a warning was

appropriate because of the "severity of the issue" and because he believed Nevler was taking advantage of the supervisor and other workers who were on duty that night.

## FACTUAL FINDINGS

Nevler challenges 10 findings of fact leading to the commissioner's conclusion of willful misconduct. The first, finding of fact 2, is a general finding that the employer's witnesses were more credible than Nevler. Nevler contends this finding cannot stand because, he claims, all of the relevant evidence was hearsay. Neither Berkau nor Fetters was in the restaurant on the night Nevler sat down with the customer.

Nevler's objection is not well taken. Unchallenged findings of fact 10, 11, and 12 make clear that the administrative law judge was well aware it is not permissible to rely on hearsay that "unduly abridges a party's ability to rebut evidence or confront witnesses." These three findings confirm that the agency decision was "not based on any of the hearsay provided by the employer":

> 10. Hearsay is a statement, either oral or written, made by some person other than the person testifying at the hearing, offered in evidence to prove the truth of an assertion made by a party. Hearsay is evidence which is not supported by live testimony and is not subject to cross-examination.
> 11. RCW 34.05.452 provides that evidence, including hearsay evidence, is admissible if in the judgment of the administrative law judge it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their own affairs. Hearsay evidence which unduly abridges a party's ability to rebut evidence or confront witnesses cannot be relied upon by the administrative law judge in making the decision.
> 12. In this case, reliance on hearsay evidence from other witnesses, who are not at the hearing, deprives claimant of his opportunity to adequately rebut that evidence and cross-examine these witnesses. This type of hearsay is not

4

sufficiently reliable upon which to make findings and base a decision. This decision is not based on any of the hearsay provided by the employer.

Nevler next contends the record lacks substantial evidence to support the findings that the employer had a policy forbidding servers from seating themselves with customers and that the policy was communicated to him. Substantial evidence is sufficient to persuade a rational fair-minded person of the truth of the matter asserted. Campbell, 180 Wn.2d at 571.

Finding of fact 4 states there was a written policy against fraternizing with customers:

> The employer has a written policy, contained in the employee handbook, which states fraternization with customers is forbidden. This would include sitting down at the dinner table to chat. Selling wine typically takes only a few minutes, and the servers are not allowed to sit down to do so. Even if a customer wanted to try numerous wines, the server is not allowed to join the customer by seating himself or herself at the table.

Finding of fact 5 states that Nevler was aware of the rule against joining a customer at the table:

> Claimant knew the rule at issue, and had received the handbook when hired. Updates are made by memos to the staff. However, the no-fraternization rule has been the same since 2007, according to the HR Director, who has been working for the employer that entire time. Claimant's supervisor has discussed the rule at issue, "no sitting at the table with a customer," with all the servers at pre-shift meetings.

The handbook is not in the record. Nevertheless, the record supports the findings. Fetters testified that an antifraternization policy was in the employee handbook. She said the policy was included in the employee handbook and new employee orientation at least since 2007, when Nevler was hired. Berkau

testified that the issue of sitting with customers had come up in the past, and he had verbally instructed all employees that it was not appropriate. This is substantial evidence supporting the finding that a written antifraternization policy was in place, including a ban on sitting down to chat with a customer at a table, and Nevler was aware of it.

Next, Nevler contends the agency decision impermissibly relied on hearsay to establish findings 7, 8, and 9:

> The Food and Beverage Director received information from a supervisor who was at the restaurant on June 9, 2015, indicating that claimant sat at a dinner table with a female customer for over an hour while on the clock.

Finding of Fact 7.

> Further, the supervisor told the Director that claimant asked the supervisor to clock him out at about 10:30 p.m., but to indicate he quit work at 9:30 p.m., an hour earlier, so he would not be paid for the hour he sat with the woman. Claimant clearly knew he was not working during that hour, and should not be paid during the time he spent visiting with the female diner.

Finding of Fact 8.

> When interviewed by the employer, claimant told the HR Director that he sat with the woman for 20 to 30 minutes. The Director of Food and Beverage ("Director") remembered claimant saying he sat with her 15 to 20 minutes. Neither of these employer witnesses was present at the time of the incident, but heard about it from others. Therefore, this part of the employer's testimony is based on hearsay.

Finding of Fact 9.

Nevler contends that because Berkau and Fetters did not have personal knowledge of how long he sat at the table or what he said to the supervisor about his timecard, the agency decision contains unsupported determinations on those

factual issues. Nevler denied requesting an adjustment to his timecard. He testified that his supervisor was the one who proposed adjusting the timecard, and he said he agreed because he was already over his scheduled light-duty hours.

Findings 7, 8, and 9 summarize testimony given by Berkau and Fetters about what they were told by other employees. Hearsay estimates of the amount of time Nevler spent sitting at the table and the supervisor's account of his conversation with Nevler about the timecard were not accepted by the agency decision as the truth of the matter asserted. Nevler's timecard is not mentioned in the conclusions of law. The agency's rejection of hearsay as a basis for the decision is confirmed by finding of fact 12:

> In this case, reliance on hearsay evidence from other witnesses, who are not at the hearing, deprives claimant of his opportunity to adequately rebut that evidence and cross-examine those witnesses. This type of hearsay is not sufficiently reliable upon which to make findings and base a decision. This decision is not based on any of the hearsay provided by the employer.

Finding of Fact 12.

Nevler contends that, contrary to finding of fact 12, the agency actually relied heavily on hearsay. He does not back up this argument. In context, findings 7, 8, and 9 do not contain facts the agency relied on to reach its conclusion. Rather, they are included to show how the incident came to Berkau's attention and why Berkau decided to investigate it by talking directly to Nevler.

As to the amount of time that Nevler spent sitting with the customer, the agency decision gave Nevler the benefit of the doubt with a finding based solely

7

on his own testimony at the hearing. That determination is found in findings of fact 13 and 14:

> Claimant now asserts he spent 30 to 40 minutes with the woman, but it was not "consecutive," in that he had to go back and forth to fetch bottles of wine and glasses for her to taste the various wines. Claimant maintains he never thought he was in violation of any policy by sitting at the dining table with the customer. He was dressed in street clothes and not a server's uniform.

Finding of Fact 13.

> Statements made by parties themselves are not hearsay, but are party admissions. Claimant made statements to the employer, and in his testimony at this hearing, which reveal he *did sit at the woman's table* for at least some part of 30 to 40 minutes. The employer's testimony about the policies shows that claimant *knew or should have known* sitting with, or "fraternizing" with customers at their dining tables, violates the employer's policies.

Finding of Fact 14.

Nevler contends findings of fact 13 and 14 misconstrue his testimony. They do not. Nevler testified that he was at the table with the customer for a total of "maybe between 30 and 40-something minutes. But it was not consecutive." He testified that during his session with the customer, he made a number of trips to obtain new wine and glasses, and had three or four interactions with other tables. Based on this testimony, there is substantial evidence to support the finding that Nevler sat at the customer's table for "at least some part of 30 to 40 minutes." Notably, Berkau testified that even if the total amount of time Nevler sat at the table totaled only 10 or 15 minutes, it "still wouldn't be acceptable. . . . Sitting at a table with a guest—they—they are not paying us to sit down at the— the table with them and enjoy their meal."

Finally, Nevler challenges a finding that he admitted to Berkau that he would not have sat down with the customer if Berkau had been there. Finding of fact 15 is the linchpin for the agency's conclusion that Nevler knew he was violating the employer's policy:

> Claimant also told the Director he would not have sat down with the customer at her table *if the Director had been present* instead of a newer supervisor. The Director feels this shows claimant was intentionally taking advantage of the less experienced supervisor to violate the policies claimant knew were in place. The evidence supports the Director's view, in that claimant's actions and admissions show he *was* likely taking advantage of the less experienced supervisor to violate the policy that night.

Finding of Fact 15.

At the hearing, Berkau gave direct testimony that supports this finding. He said he asked Nevler, "'If I was there and if I was managing that evening, would you have spent the amount of time with that guest at the table? Would you sit down with the guest?' He said he wouldn't, um, so I feel like he also took advantage of a supervisor that he thought wouldn't, uh, wouldn't maybe mind him doing what he did." What Nevler said in response to Berkau's question is an admission by a party opponent, so it is not hearsay and was properly taken into consideration by the agency.

At the hearing, Nevler did not contradict Berkau's testimony on this point. Only in his petition for review by the commissioner did Nevler offer a competing version of the conversation. He wrote that Berkau "told me, not asked me, that I wouldn't do that if he was present, and I said I wouldn't have to because the server would come to him for that kind of picky customer with wine instead of me." This explanation comes too late. A reviewing officer cannot take additional

9

evidence outside the record. Towle v. Dep't of Fish & Wildlife, 94 Wn. App. 196, 205, 971 P.2d 591 (1999). The finding of fact that Nevler would not have sat down with the customer if Berkau had been present was undisputed on the record of the hearing.

In summary, the challenged findings of fact are supported by substantial, nonhearsay evidence.

## CONCLUSION OF MISCONDUCT

The agency decision concludes, "The preponderance of the evidence shows that claimant's actions were an intentional violation of known, reasonable employer policies, and amounted to statutory misconduct under RCW 50.04.294." Conclusion of Law 10. Nevler contends that even if the findings of fact are supported, the department made an error of law in concluding that he committed misconduct.

Nevler claims that the restaurant regularly tolerated the practice of servers sitting with customers. This court addressed an employer's allegation of misconduct in circumstances where corporate policy conflicted with actual practice in Albertson's, Inc. v. Employment Security Department, 102 Wn. App. 29, 15 P.3d 153 (2000). In Albertson's, a supermarket employee was terminated for purchasing expired meats at a discounted price in violation of the employer's policy. Albertson's, 102 Wn. App. at 32. Evidence was presented that employees were routinely allowed to purchase expired food by the department manager in contravention of corporate policy. Albertson's, 102 Wn. App. at 33. Because the supermarket's corporate policies were at best unclear, the court

affirmed the agency's conclusion that the employee had not committed willful misconduct. Albertson's, 102 Wn. App. at 42.

In the present case, Berkau testified that in the past, there had been "more than one server" who felt that it was "appropriate" to sit down at a table and discuss food or wine with the guest, but he had never seen it happen for more than a minute or two. Berkau also testified that he had addressed this behavior by instructing staff that such acts were not allowed. Nothing in the record contradicts Berkau's testimony. Unlike in Albertson's, there is no evidence that violations of the rule were routinely condoned.

Nevler also contends the agency erred by concluding his violation was willful. "'Misconduct' does not include: . . . (b) Inadvertence or ordinary negligence in isolated instances; or (c) Good faith errors in judgment or discretion." RCW 50.04.294(f)(3). Nevler had not been disciplined in the past for violating the policy against fraternizing with customers. He testified that he did not willfully violate the policy but simply responded to a request from a busy server who did not have time to answer the customer's many questions about wine selection. Nevler said that because he was on light duty, he was dressed in plain clothes like a manager, not as a server, and hence it was reasonable for him to believe the policy did not apply to him on the night in question. He points out that his attention to the customer resulted in her purchase of an expensive bottle of wine.

Nevler cites Michaelson v. Employment Security Department, 187 Wn. App. 293, 349 P.3d 896 (2015). In Michaelson, a delivery driver was terminated

11

after being involved in three preventable driving accidents in the span of 12 months. Michaelson, 187 Wn. App. at 297. The agency's denial of unemployment benefits was reversed. The appellant's poor driving record demonstrated at most a failure to exercise reasonable care, not willful misconduct. Michaelson, 187 Wn. App. at 301-02.

Nevler also cites Wilson v. Employment Security Department, 87 Wn. App. 197, 940 P.2d 269 (1997). In Wilson, a jeweler was terminated for losing several loose diamonds. Wilson, 87 Wn. App. at 199. The agency's denial of benefits was reversed. There was no evidence in the record to show that the employee acted with a deliberate intent. "Actions or failures to act that are simply negligent, and not in defiance of a specific policy, do not constitute misconduct in the absence of a history of repetition after warnings." Wilson, 87 Wn. App. at 203.

Michaelson and Wilson are of no avail to Nevler. As discussed above, substantial evidence supports the finding that he was aware that his conduct violated a specific policy. There is no evidence to support the idea that the policy applied to servers only if they were in a server uniform. According to Nevler's own testimony, he spent more than 15 minutes seated with the customer, an amount of time that is inconsistent with a momentary lapse in judgment. And most significantly, Nevler admitted to Berkau that he would not have sat down at the table to sell the wine if Berkau had been there. Because the findings show that Nevler acted deliberately rather than carelessly, the commissioner did not err in concluding that Nevler's conduct showed a willful disregard for his employer's interests.

Finally, Nevler contends the commissioner's ruling was arbitrary and capricious. "For an agency's decision to have been 'arbitrary or capricious,' the decision must have been willfully unreasonable, without consideration and in disregard of facts or circumstances." W. Ports Transp., Inc. v. Emp't Sec. Dep't, 110 Wn. App. 440, 450, 41 P.3d 510 (2002), quoting Buell v. City of Bremerton, 80 Wn.2d 518, 526, 495 P.2d 1358 (1972). Having found that the commissioner's ruling was supported by substantial evidence and the law was properly applied, we conclude that the commissioner was neither arbitrary nor capricious.

Affirmed.

Becker, J.

WE CONCUR:

Leach, J.